## SMITH v. LEACH.

SURVEYS: *Evidence.*

A county surveyor's record of a survey made by him is only *prima facie* evidence of the correctness of the survey, and parol evidence of other surveys is admissible to prove it incorrect. Section 1182 Mansfield's Digest, providing that no survey made by any other than the county surveyor, or his deputy, shall be legal evidence in any court, means that the certificate of such survey shall not be admissible as documentary evidence of itself, without other proof.

APPEAL from *Benton* Circuit Court.

Hon. J. M. PITTMAN, Circuit Judge.

*L. H. McGill* for appellant.

No act or record of a county surveyor is conclusive, and appellant should have been allowed to show the incorrectness of the German survey, and the correctness of the Maxwell survey. *Gantt's Digest, sec. 988.*

*Section 991, Ib.,* makes the surveys of the county surveyor the only *legal evidence*, in the same sense that other records are, *i. e.*, the *best* evidence to establish lines, boundaries, etc., but was not intended to make them *conclusive.* But if so, as both surveys were made by county surveyors, there is no way to disprove the correctness of any survey made by a county surveyor until he goes out of office. No person can be concluded by the *notice* provided for in *sec. 980, Ib.* No suggestion or objection he might make would be binding on the county surveyor; the parties scarcely ever could know at the time whether the surveyor was running a correct line or not. They would not know what objection to make or what to insist upon.

*E. P. Watson* for appellee.

The Legislature has the power to refer disputed boundaries to a statutory tribunal for settlement, and when legally made cannot be questioned in a collateral proceeding. Until attacked by bill in chancery, a line established thus is conclusive between the parties. *Pom. Eq., Title Boundaries; Gantt's Dig., sec 991, etc.*

The line having been run as prescribed by law, both parties being present, and no objection made, Smith is estopped from questioning this survey in a collateral proceeding. *Bigelow on Estoppel, p. 147.*

EAKIN, J. Leach complained, at law, of Smith for forcibly entering his close, and carrying away a log house worth $25, and a thousand rails worth $75, stating his damage to have been $100. Smith, in his answer, denied that plaintiff was in possession; that he had himself broken and entered the close of plaintiff, or that he had carried away the plaintiff's property as alleged, and generally the material allegations of the complaint. He says the house and rails were his own, being situated upon, and part of his own freehold, of which he had been a long time in possession. Upon trial by jury the plaintiff obtained a verdict for $22.50 damages, and judgment was rendered accordingly.

The evidence discloses that the plaintiff entered the eighty-acre tract as a homestead in 1882; that he afterwards notified the defendant who owned the adjacent lands on the south side, that the county surveyor would run the line between them on a given day; that this was done, the defendant being present for the purpose of finding corners and assisting, and expressing no dissatisfaction with the survey as made. When the line was run it was found that the fence of defendant was eight or ten feet

Smith v. Leach.

over upon the plaintiff's side, together with the site of
about two-thirds of a log house, which had been built by
defendant but removed after the homestead entry, but
before the survey was made. The rails were removed
afterwards. The values of the house and rails were shown.

The county surveyor, German, was introduced, who tes- 1.SURVEYS:
tified that he did not have with him the field-notes when   Evidence.
he run the line, and believed that he could do it accurately
without them. He compared the field-notes with the
survey, afterwards, and found it correct. He introduced
the record of his survey, which was objected to by de-
fendant as not in accordance with the statute.

The defendant testified that he was the owner and in
possession of the house and rails at the time he removed
them; that they were within his line, as established by
another county surveyor, Maxwell, about fifteen years
before.

He offered to prove by the oral testimony of Maxwell,
that, as county surveyor, about fifteen years before, he had
run and established the same line, but had made and
preserved only a partial record of it; that the survey was
regularly and lawfully made in his official capacity, and
varied from that made by German by about eight feet.
He had since resurveyed the line and found that his sur-
vey was correct and that of German incorrect. This evi-
dence was not allowed.

Defendant then offered to prove by Robinson that he
had been a practical engineer and land surveyor for twenty-
five years, and was familiar with the lands, and had care-
fully run the line in question; that the line established
by Maxwell was correct, and that established by German
was incorrect; and further, that it was almost impossible
for any surveyor to make an accurate survey of lands with-
out the field-notes before him. This was not permitted.

19

He further offered, but was not allowed, to prove the true line by one of the chain-bearers in Maxwell's original survey, and that by that line the house and fence would be shown to be on the land of defendant.

This was all the evidence.

The court instructed the jury, properly, that the record of the survey made by German, the county surveyor, was *prima facie* evidence of the correct line, so far as it appeared from the survey; and that it was to be taken as the true line between the lands, unless they should find from the evidence that some other line is the true one. That is in accordance with the statute, which makes the surveyor's record *prima facie* but not conclusive evidence. It throws the onus upon the other party of showing what the true line is. If there was any error in the case it was in excluding the evidence offered, of Robinson, Maxwell, and the chain-bearer.

Boundaries, with regard to their directions, length, and the areas they inclose, are generally determined by statutes, deeds or some documentary evidence. This is not always the case, as they may sometimes be determined by consent, or by continuous occupation to a line. But whenever the relative position of a boundary line with regard to objects, the location of which are not included in the purposes of a survey is in issue, then that relative position is a fact which may and almost always, in the nature of things, must be proved by oral testimony. This is constantly done in criminal as well as civil cases. There is never a venue proven but the witness testifies in effect that the locus is upon this side or that of a county line, or a district or city boundary. In civil cases it is constantly the practice to prove collaterally the situation of a thing with regard to some boundary line. This includes oral proof of the boundary line itself.

The rejected testimony was that of the former surveyor, to the effect that he also, in his official character, had marked the same line, and that German's marking was not correct, supported by that of a chain bearer, who testified that the line marked by Maxwell did not take Smith's fence, and also by the testimony of an expert surveyor and engineer of long practice, familiar with the lands, to the effect that he had made an accurate survey and careful measurement of the same line, and that Maxwell's was correct and German's mistaken.

The question is, did the record of the survey preclude the introduction of parol evidence to show that the actual line marked by German was not the true line?

The county surveyor is required to keep in a well bound book, a record of *every survey* made by him, and it is provided that a certified copy of this record, under his hand, shall be admitted in any court, as *prima facie* evidence, but that no act of a county surveyor, nor record, shall be conclusive; but may be reviewed by any competent tribunal, in any case where the correctness of it may be disputed. (*Mansfield's Digest, secs. 1174, 1178, 1179.*) That means it may be collaterally attacked wherever it may form a material issue.

Only judgments and decrees of courts, and the agreements of parties, or acts of acquiescence which it would be fraudulent to gainsay, will create an estoppel to assert true boundaries. It would be anomalous if the mere act of a county surveyor, subject himself to no control, and perhaps incompetent to act in all cases skillfully, should be able to estop land owners from asserting their true boundaries, even by giving them notice to be present. They can make no issue with him when there.

The statute does not make it the county surveyor's business, nor invest him with any general powers to determine

boundaries between individuals. He is a public couvevience, not a general arbiter, although his acts in the line of his duty may make a *prima facie* case against individuals. His authority is limited. His duty is, if called upon, to survey lands sold for taxes, to make surveys of lands in litigation under orders of court, to make surveys of roads when required by viewers and reviewers, and to survey and lay off lands for any person who may have purchased or entered them from the Government. In the last case he is required to notify all adjoining proprietors to be present, but no provision is made for their interference or objection. It is not like the old writ for perambulation, and binds nobody. His record is simply *prima facie* evidence of itself, with the authenticity given by his certificate, and only shifts the burden. It is taken as proof in the absence of better.

Construction of the statute. Section 1182 of Mansfield's Digest provides that no survey made by any one else except the county surveyor or his deputy shall be considered as legal evidence in any court of law or equity, unless such surveys are made under any authority of the United States, or by the mutual consent of parties.

This is against common right and must be rejected as unconstitutional, under the doctrine of *Cairo & Fulton R. R. v. Parks, 32 Ark., 131,* unless we may give it some other construction than that insisted upon here in support of the ruling of the Circuit Court. It purports to make the certificate of the surveyor conclusive against the fact. This is shocking, when we consider that the surveyor is absolutely uncontrolled in fixing boundaries, and may affect unwilling parties who are defenseless.

The true construction of this section is to be derived from observing the section which makes it the duty of the surveyor to record "every *survey* made by him," and the

subsequent section which makes a certified copy of this survey documentary evidence of itself. The same authority is forbidden to any one else; that is, they may not furnish such a certificate of a survey to be documentary evidence of itself, without other proof. That does not interfere with the general rule that the true locations of boundaries may be shown by sworn testimony of witnesses in court, and that may be strong enough, and command sufficient confidence to overcome with a jury the *prima facie* case made by a surveyor's certificate.

The jury should have been allowed to consider the evidence offered, and a new trial should have been awarded on the motion.

For error in refusing, reverse the judgment and remand.