MILLER v. FARMERS' BANK & TRUST COMPANY.

Opinion delivered June 10, 1912.

1. BOUNDARIES—AGREEMENT.—The owners of adjoining tracts of land may by parol agreement settle and establish a permanent boundary line between their lands, which, when followed by possession according to the lines so agreed upon, is binding and conclusive, not only upon them, but upon their grantees. (Page 105.)

2. PARTY WALL—POSSESSION.—Possession of a building inclosed by a party wall does not involve possession of the entire party wall. (Page 107.)

3. SAME—BONA FIDE PURCHASER.—One who purchases a building one wall of which appears to have been intended for a party wall will be held to be put upon inquiry; and where inquiry and examination of the records would disclose that the wall was a party wall, he was not an innocent purchaser. (Page 107.)

4. SAME—BURDEN OF PROOF.—Where the owner of a building seeks to enjoin an adjacent proprietor from using his wall as a party wall, the burden of proving that the wall rested entirely upon plaintiff's land is upon plaintiff. (Page 107.)

5. BOUNDARIES—WHEN AGREEMENT AS TO BOUNDARIES ENFORCED.—It is the policy of the law to encourage agreements between adjacent land-owners as to their boundaries, and to give effect thereto when shown to exist. (Page 108.)

Appeal from Yell Chancery Court, Dardanelle District; *Jeremiah G. Wallace*, Chancellor; affirmed.

STATEMENT BY THE COURT.

The appellant, plaintiff below, alleged that he was the owner of lot No. 2 in block lettered "I" in the town of Dardanelle, State of Arkansas, by warranty deed from John C. Brooks, the owner of said lot; that from the 11th day of April, 1902, when he received his deed, he had been in the peaceable, open, continuous and adverse possession of the lot. He alleged that the defendant, "claiming to be the owner of lot 1 in said block "I," is now having a brick building erected on said lot 1; that the north line of said lot adjoins the south line of lot 2; that defendant is claiming the right and proceeding to attach its east and west walls to the plaintiff's brick wall, and thus not only enclosing six inches in width and eighty-five feet in length, or more, of plaintiff's lot, but are using the south wall of plaintiff's building as the north wall of its building." He alleged that the "defendant claims the right to use the wall by virtue of a deed from L. C. Hall, and

that L. C. Hall had no title or right to convey any of the wall, nor had any right or title to the strip of land sought to be enclosed by the defendant."

He further alleged that he purchased and paid for all of lot 2 and all of the wall in good faith, believing he was acquiring the full title and interest in both lot and wall. He further alleged that L. C. Hall, the grantor of the defendant, "represented to plaintiff at the time the latter purchased the lot that the title was clear, and that the plaintiff, relying on his representation, purchased the lot, all the while believing that he was acquiring the title to all of the lot and all improvements thereon." He therefore alleged that Hall was estopped from selling or setting up title thereto; that he forbade the defendant from using the wall or enclosing a part of his lot No. 2 within that building, but that it, notwithstanding, was proceeding to erect its building on the lot, to his great and irreparable injury. He therefore prayed for a temporary restraining order, and, on final hearing, permanent injunction restraining and enjoining defendant from extending the walls of its building on his said lot in the manner alleged in his complaint.

The defendant, in its answer, denied that the plaintiff was the exclusive owner of the wall referred to in his complaint, and averred that the wall, including the foundation, was erected upon the line "dividing lots 1 and 2 in the block lettered "I" in the town of Dardanelle, "in the year 1894, by agreement between Wm. Brooks, the then owner of lot 2, and J. M. Harkey, who was then the owner of lot 1." That the said Harkey conveyed the same to L. C. Hall, and that L. C. Hall conveyed lot 1 to the defendant, who holds title to the south half of the wall in controversy as a division wall. The defendant alleged that lot 2 is twenty-four feet wide, and is covered by a brick building of the same width, measuring from the center of the north wall of the building to the center of the south wall thereof, and that twenty-four feet is all the ground that was conveyed to plaintiff by Wm. Brooks, under whom plaintiff claimed.

The defendant further denied that the plaintiff at any time held title to or that he had been in possession of the south half of the division wall and its foundation, as claimed

and set forth in the complaint, or that he had paid taxes or insurance on same. Defendant also denied the allegations as to innocent purchaser, and set up that the plaintiff knew at the time and was fully advised at the time he purchased that the south half of the division wall was erected on lot 1, and was owned and held by L. C. Hall, under whom the defendant claims title. There was adduced in evidence the following agreement:

"This agreement, entered into this 15th day of August, 1894, by and between John C. Brooks and John M. Harkey both of the county of Yell and State of Arkansas, witnesseth: That, whereas, the said John C. Brooks is the owner of lot No. 2 in block "I," and the said John M. Harkey is the owner of lot No. 1, said block, in the town of Dardanelle; and, whereas, the said John C. Brooks contemplates the erection af a brick building on said lot No. 2, the south wall of which is to be erected on the line dividing said two mentioned lots, severally owned by the said John C. Brooks. Of said division wall, the said John M. Harkey hereby agrees to pay one-third of the expenses incurred in the building of said wall, including the necessary excavation for a rock foundation for said wall, and said foundation to be built of rock and mortar, and the cost thereof not to exceed sixteen cents per cubic foot, the cost of said brick wall not to exceed $10 for each one thousand of bricks placed in said wall, including all and every expense incurred in the building of same.

"It is further agreed by and between the said parties hereto that the height of said wall is to be thirteen feet between the floor and ceiling joists, and is to extend three and one-half feet above the roof of the building; that the rock foundation is to be of sufficient width for the support of flooring joists on each side of said wall; the openings are to be made or left therein in the south side for both floor and ceiling joists, the number, size and place of openings to be designated by the said John M. Harkey.

"And it is hereby agreed by and between the said parties hereto that, in consideration of the payment by the said John M. Harkey of one-third of the cost of the erection of said division wall, the same, including the foundation, is to be equally owned and controlled by the said John C. Brooks and

John M. Harkey, the parties hereto, that is to say: the said John C. Brooks is to be and become the owner of the north one-half, and the said John M. Harkey of the south one-half of said wall.

"It is further agreed by the parties hereto that either of them may at any time, at his own expense, build on top of said wall for the purpose of the erection of a second story.

"And should the other party desire to make use of such second story wall he can do so by, paying to the party building it one-half of such cost.

"In witness whereof, the said parties have hereunto set their hands and seals this 3d day of September, 1894.
          (Signed)                    "John C. Brooks,
                                       "J. M. Harkey."

A witness by the name of Lucas Weiser testified as follows: "I have lived in Dardanelle since the year 1876. I am a rock mason. I laid the foundation between lots 1 and 2, in block "I," in the town of Dardanelle, Yell County. John C. Brooks told me where to build the foundation referred to. He put down some stakes, and told me that was the center of the wall, and to extend the wall one foot on each side from the center. In fixing the place where the foundation was to be built, we commenced measuring from the southwest corner of Isham's restaurant, which is situated on the north side of Brooks' brick building, which is about the middle of block "I." There was an old shanty situated on the south side of the wall that I built. There was about eighteen inches vacancy between the wall I built and the old house."

The plaintiff, in his own behalf, testified in substance that the south wall of his building (the wall in controversy) belonged to him. He claimed title to all of the lot and building by the statute of limitations of seven years. Lots 1 and 2 are each twenty-four feet wide. The defendant's new building is twenty-four feet and seven inches wide, to his building. At the time of the execution of the deed to him he understood that he was to get the whole thing.

On cross examination, he testified that lot No. 2 is twenty-four feet wide, and his building from the middle of the south wall to the middle of the north wall is twenty-four feet. The rock foundation of the south wall of his building extends out

past the brick five inches, sufficient to receive the sleepers of another building. There were soft brick left in the upper part of the south wall of his building to receive joists for the ceiling of a building that might be erected on lot 1. He never saw any contract between Brooks and Harkey in regard to the division wall. It is twenty-four feet from the south side of his south wall to the south side of Bullock's wall (meaning the inside of his north wall). He paid the taxes on the wall all the while since he bought the property; that is, he paid the taxes on lot No. 2 and the improvements on same. Mr. Hall, (the grantee of appellee) never offered to pay on it, and never assessed it to himself. It was assessed all the while in plaintiff's name. The soft brick had been seen by plaintiff in his wall before the old building was torn down. These soft brick were taken out and the joists for the new building were put in his wall. No part of his south wall is on lot 1. According to Hunt's survey, his south wall lacks one inch of reaching to lot 1.

Charles Hunt testified that he was surveyor of Yell County. He was acquainted with Joseph Brearly, Sr., who was the owner of the land on which Dardanelle was situated; that he was a practical surveyor; that he laid off and showed the proper location for lot 1 in block 5 in the town of Dardanelle at the time of the building of the Murdock & Kimball storehouse; that said storehouse is still standing, and, measuring from the southwest corner of block 5, says he, "I find that the two lines between lots 1 and 2, in block "I" of said town of Dardanelle is along the south line of Dr. S. E. Miller's wall, and that no part of S. E. Miller's brick wall is on lot 1 of said block "I," but the rock foundation extending further south than the brick wall is on said lot 1, in block "I." There are no records or field notes of the lots and blocks in the town of Dardanelle, and I have no knowledge of the starting point from which I made the survey for Dr. S. E. Miller except what I was told by Doctor Brearley, the founder of the town, and block "I" was not laid off by the latter. According to my survey, lot 1, block "I," abuts against the wall between lots 1 and 2, block "I." I also measured the three brick buildings erected by John C. Brooks about 1894, now owned by S. E. Miller, C. C. Sims and R. C. Bullock. Each has twenty-four feet

front from the middle of each division wall, including the one between lots 1 and 2. If the north wall of the Dardanelle Bank building is on the proper line, then lot No. 1, block "I," will extend one and one-half inches into the wall between lots 1 and 2 in block "I."

W. S. McCarroll testified for the appellee, that he was its cashier. Its bank building is situated on lot 1, block "I," of the town of Dardanelle, Arkansas. He measured the distance from the north wall of the Dardanelle Bank & Trust Company's building, situated on the northwest corner of block "A" of said town. The distance is seventy-four feet, lacking two inches, from that point to the south side of the division wall, allowing fifty feet for the width of the street and twenty-four feet for the width of lot 1 in block "I." He made the measurement with a tape line.

The court, after hearing the evidence, entered a decree dismissing the appellant's complaint for want of equity, and he duly prosecutes this appeal.

*John M. Parker,* for appellant.

1. Miller is the sole owner of lot 2, having purchased under a warranty deed in April, 1902, and his deed carries with it an indefinite extent upward and downward; it carries both the wall above and below the surface. 12 A. & E. Enc. of Law, p. 655, note 1. (1 ed.).

2. The proof supports appellant's plea of the statute of limitations. The statute is not merely defensive, but confers title which may be asserted by ejectment. 38 Ark. 181; 59 Ark. 626.

3. Appellant is entitled to judgment on the ground of estoppel. 39 Ark. 135; 33 *Id.* 468.

*L. C. Hall,* for appellee.

1. Where the true location of a boundary is in doubt, adjoining owners may by agreement fix a line which will bind them, although their possession under such agreement may not continue for the full statutory period. 71 Ark. 248; 75 *Id.* 405; 96 *Id.* 168; 72 Ill. 113. These boundary agreements need not be shown by direct evidence; they may be inferred from the acts, conduct and acquiescence of the parties. 91 Mo.

457; 4 S. W 135; 81 Tex. 210; 16 S. W. 877; 91 Cal. 580; 27 Pac. 931; 35 Tex. 801; 11 Johns, (N. Y.) 123.

WOOD, J., (after stating the facts). The proof shows that the lots in block "I," in the town of Dardanelle, Yell County, Arkansas, were twenty-four feet wide. The grantor of appellant, J. C. Brooks, about the year 1894, erected brick buildings on lots 2, 3 and 4 in block "I" of said town. The evidence warrants the conclusion that each of these buildings was to have a front of twenty-four feet from the middle of the division wall between each of them. We are of the opinion that the proof warrants the conclusion that the then owner of the lots intended for the walls between each of the buildings erected by him on lots 2, 3 and 4 to be a division wall. At the time he erected the buildings, he was not the owner of lot No. 1, adjoining lot 2 on the south, so he entered into an agreement with the owner of that lot, J. M. Harkey, that the wall which he was then building on lot No. 2, between lots 1 and 2, should be a party wall. The building of this wall was necessary to complete his building on lot No. 2; and, as he did not own lot No. 1, he entered into the agreement doubtless for the purpose of giving the owner of lot No. 1 an interest in that wall.

There can be no well-founded doubt but what the agreement between Brooks and Harkey, set forth in the record, was intended to be an agreement for the erection of a party wall. That being true, it can not be maintained that Brooks or his grantees were at that time in the possession of the entire wall between lots 1 and 2; or, in other words, the half of the wall that was assigned to Harkey under the agreement was in his possession from the date of that agreement, and those who claimed under him got the benefit of his possession. The contention of appellant that he has twenty-four feet front in lot 2, measured from the south side of the wall on lot 2 to the south side of the wall on lot 3, would have the effect of ignoring the party or division wall between Brooks, his grantor, and Harkey, through whom appellee deraigns title, and also the division wall that Brooks evidently intended to erect between the three buildings. The contention of the appellant gives the owner of the three buildings erected by Brooks and sold by him to other parties only one wall to each of their buildings. This was not in contemplation of Brooks at the time he en-

tered into the agreement with Harkey as to the party wall, but this fact argues strongly that Brooks intended at the time he was erecting these buildings that each of the walls between the buildings on the several lots should be party or division walls, and that the twenty-four feet frontage to each lot should be measured from the middle of each wall between the several buildings, and that his purpose in entering into the agreement with Harkey was to establish a party wall, regardless of the exact boundary line between them.

The deed from Harkey to L. C. Hall, which was made an exhibit to the deposition of the cashier of appellee, together with the testimony of the man who erected the wall under the direction of Brooks, the owner, shows clearly, we think, that the wall in controversy was intended by the then owners of the property to be built on the boundary, line between their lots regardless of the true boundary, and was to be a party wall. The deed from Harkey to Hall recites that the former conveys to the latter "also all my right, title and interest in and to a certain brick division wall built by John C. Brooks on the dividing line between said lot 1 and the lot contiguous and north of the said lot 1, said division wall having been built in accordance with the terms and conditions of a certain contract entered into and executed by the said J. C. Brooks and J. M. Harkey on the 3d day of September, 1894." This deed was on record when the appellant purchased the lot in controversy.

We are of the opinion that the clear preponderance of the evidence shows that the owners of the lots from whom the appellant and the appellee deraign title established the boundary line between lots 1 and 2 and erected the wall in controversy on that boundary line, and that possession was delivered to each of the respective parties under that agreement, and that they and their grantees are bound by such agreement.

Mr. Justice HART, speaking for this court, in *Payne* v. *McBride*, 96 Ark. 168, quoting from *Kitchen* v. *Chantland*, 130 Ia. 618, says:

"Where there is doubt or uncertainty or a dispute as to the true location of a boundary line, the parties may by parol fix a line which will, at least when followed by possession with reference to the boundary so fixed, be conclusive upon them, although

the possession is not for the full statutory period." Citing other cases by this court announcing the same doctrine.

In *Cutler* v. *Callison*, 72 Ill. 113, it is said: "It is a principle well established that the owners of adjoining tracts of land may by parol agreement settle and establish permanently a boundary line between their lands, which, when followed by possession according to the lines so agreed upon, is binding and conclusive, not only upon them, but their grantees."

The appellant's contention that he has been in possession for the statutory period can not be sustained. His possession of the storehouse inclosed by the party wall does not give him possession of the entire wall, but he only had possession of such part of the wall as was conveyed to him by his grantee. The owner of adjoining lot No. 1, by virtue of the agreement as to the boundary and party wall, got possession of that part of the wall coming to him under the agreement.

The contention that appellant had no notice of the appellee's rights, and that he was therefore an innocent purchaser, is not well taken. His own testimony shows that he knew of the existence of facts in regard to the wall that put him on notice and made it his duty to inquire as to the title to that part of the wall next to his lot. His testimony shows that he knew that the wall was constructed in a manner so as to admit an adjoining building to be attached to it. Provision was made for joists and sleepers to be let into the wall, showing that the wall was constructed for the purpose of having the building on the adjoining lot attached to the wall in controversy. Upon inquiry and examination of the records, appellant might have easily ascertained the true condition of the title. He was not therefore an innocent purchaser.

The above discussion is based upon the concession that the wall in controversy was built wholly upon the lot of appellant. We are of the opinion, however, that it is not shown by a clear preponderance of the evidence that such is the fact. The burden in this respect was upon the appellant; and, as we view the testimony, he has failed to establish by a clear preponderance of the testimony that the wall in controversy was built entirely upon lot No. 2. It is by no means clear that the measurements under which he claims were based upon an accurate survey of

the lots in question. The testimony, at most, in our opinion, fixes no definite and certain points, established by a survey shown to be correct, from which the measurements were taken. According to the testimony of the cashier of the bank and the points from which he measured, the wall in controversy was at least two inches on the lot owned by the appellee, while, according to some of the other testimony in the record, the wall was entirely on the lot of the appellant. But there was, to say the least, great doubt and uncertainty about it, and, under the circumstances, the agreement between the then owners for the establishment of a boundary line was very appropriate. It is the policy of the law to encourage such agreements and to give them effect when shown to exist. *Cavanaugh* v. *Jackson*, 91 Cal. 580; *Levy* v. *Maddox*, 81 Tex. 210.

The doctrine of estoppel has no application to the facts in this record.

The judgment of the chancery court is correct, and it is affirmed.