FURLOW *v.* DUNN, ADMX.

4-6023 144 S. W. 2d 31

Opinion delivered September 30, 1940.

*James H. Nobles, Jr.,* and *J. R. Wilson,* for appellant. *R. H. Peace,* for appellee.

HOLT, J. This litigation grows out of a dispute over the division line between lots 1 and 2, block 8, in the town of Hampton, Calhoun county, Arkansas.

The record reflects that in 1851 N. N. Hunt conveyed to two commissioners for Calhoun county a ten-acre tract of land, in the form of a square, which constituted the original townsite of the town of Hampton. A survey was made of this tract, dividing it into blocks, lots, alleys and streets, and a plat of this survey duly recorded in the recorder's office at Hampton, where it may now be found. Block 8 was divided into five lots, each containing 5,435.1 square feet, from which it has been determined that each lot is 36.6 feet wide and 148.5 feet long. These lots were occupied and improved and have been so occupied and improved down to the present time.

In the year 1900, A. A. Ables purchased from W. C. Dunn lot 1 of block 8 and occupied said lot and building thereon until he sold said lot to appellant, H. G. Furlow, in 1933. While the deed to the lot was taken in the name of Claudia Ables, the wife of A. A. Ables, the evidence is that he purchased the lot, paid for it himself, paid the taxes as they accrued and exercised control, possession and ownership.

In January, 1913, Porter & Fike purchased lot 2 in block 8. At the time of this purchase there was a vacant space between Ables' building on lot 1 and the building then on lot 2. The dividing line between the lots ran about midway of this vacant space, each building located a few feet back from this dividing line.

In 1914, there being uncertainty and doubt as to the location of the dividing line, Porter & Fike and Ables agreed upon the dividing line between lots 1 and 2 and dug a well on this dividing line so that one-half of the well would be on lot 1 and the other half on lot 2, the line running directly across the center of the well. Ables claimed and occupied the ground south of this well line as lot 1, and Porter & Fike claimed and occupied the ground north as lot 2. This line they, and their successors in title, recognized as the dividing line thereafter.

In 1917, Claudia Ables executed a deed to A. A. Ables, her husband, to lot 1, block 8.

September 30, 1925, C. R. Dunn purchased lot 2 from Porter & Fike, removed the old building from the lot and erected a new one thereon with the south wall resting on a concrete foundation along the south line of lot 2 across the center of the well. Before the erection of this building by Dunn, he and Ables, the owner of lot 1, agreed upon the dividing line between the two lots as that adopted and established by Ables and Porter & Fike in 1914, which ran across the center of the well. Both of these parties recognized this line as the true one at all times thereafter, Ables claiming and occupying the ground south of the line and Dunn the ground north of the line.

March 27, 1932, the buildings on lots 1 and 2 burned, leaving the old concrete foundation wall across the center of the well, marking the dividing line between the two lots.

May 9, 1933, appellant, Furlow, purchased lot 1 from Mr. Ables. In June thereafter, Furlow constructed a building on the south part of lot 1, marking off the lines for the building, himself, without a survey. The north wall of this building rests about fifteen feet south of the old well line and a few feet south of the north wall of the old Ables building. Appellant, Furlow, also constructed a concrete walk in front of this new building to the north, and ended this walk even with the west end of the old concrete foundation wall which ran across the center of the well.

In 1938, Dunn erected a two-story building on lot 2 with its south wall 9 feet 8 inches north of the old well dividing line between the two lots at the east end and 8 feet 4 inches north of the old line at the west end.

Dunn died October 19, 1938, and appellee, Mrs. Clyde E. Dunn, his widow, was appointed administratrix and guardian of their minor daughter, Gloria Ann Dunn.

May 22, 1939, appellant, Furlow, removed the old foundation wall running across the center of the well

and began preparations for the erection of a building to cover the vacant space between his building on lot 1 and the Dunn building on lot 2, attempting thereby to occupy land claimed by Dunn on lot 2, north of the old well line up to the south wall of Dunn's building.

Following appellant's entrance upon the ground between the old well line and the Dunn building on lot 2, appellees brought suit in the Calhoun chancery court to enjoin appellant, Furlow, from entering upon and occupying any part of lot 2 and for consequent damages, and prayed for a decree "establishing the south boundary line of lot 2 in block 8 in the town of Hampton, Calhoun county, Arkansas, as the line running from a point 8 feet 4 inches south of the southwest corner of the two-story brick building now located on a portion of said lot 2, through a point 9 feet 8 inches south of the southeast corner of said building, extending in a straight line to the east side of said block 8 in the said town of Hampton, Calhoun county, Arkansas; that title to the said strip or parcel of land 8 feet 4 inches wide at the west end and 9 feet 8 inches wide at the east end and the entire length of block 8 from east to west, and lying immediately north of the above described line prayed to be established as the south boundary line of said lot 2 in said block 8, be confirmed and forever quieted in plaintiffs."

Appellant answered denying every material allegation in the complaint, asked for damages against appellees, and in a cross-complaint made A. A. Ables and his wife cross-defendants.

The chancellor made the following findings of fact:

"The court finds, according to the testimony of the witnesses, the dividing line, between lots 1 and 2, in block 8, in the town of Hampton, involved in this lawsuit, had been in dispute, and then agreed upon by the owners of these adjoining lots, for many years prior to the time that the defendant, H. G. Furlow, purchased lot 1. The dividing line between lots 1 and 2 had been established under the agreement between the owners of the adjoining lots.

"Furlow, at the time of his purchase, knew of the line that had been established between the two lots; that is, what property had been occupied by Dunn and his predecessors in title, on the one hand, and Ables on the other. He went into possession of the lot which he had purchased from Ables, recognizing this line, and with the knowledge that he was purchasing the property occupied by Ables, who had erected a building on the lot, and occupied it. The defendant now occupies the store building which was erected in accordance with a survey, under which the entire town of Hampton seems to have been laid out. Whether or not that survey is correct, I do not know, but the entire town of Hampton was laid out on a different variation to that testified to by the surveyors who have testified in this case.

"Mr. Furlow went into possession, and has improved his lot, upon the assumption that that survey was correct. He cannot now claim the benefit of that old survey, and, at the same time, recover damages from Ables for the failure of his title. To hold otherwise would give to Furlow the right to take about forty, or forty-one, or forty-two feet frontage instead of thirty-six and six-tenths which he actually purchased from Ables.

"Ables had acquired title to the property now occupied by the defendant, Furlow's store, or a greater portion of it, that Ables and his predecessors had occupied for many years prior to its conveyance to Furlow, and he delivered possession of that property to Furlow, and Furlow now claims it under his purchase from Ables. In equity, he cannot do this and, at the same time, recover damages for the failure of his title, or any portion of it."

The chancellor decreed, among other things, "that the boundary line between lots 1 and 2 in block 8 in the town of Hampton, Calhoun county, Arkansas, be and the same is hereby established as being the straight line running from a point 8 feet 4 inches south of the southwest corner of the two-story brick building now standing on a portion of said lot 2 in said block 8, and extending

eastward through a point 9 feet 8 inches south of the southeast corner of above said two-story brick building, and intersecting with the east line of said block 8 in said town of Hampton, Arkansas, and it is further decreed by the court that title to the strip of land 8 feet 4 inches wide at the west end and 9 feet 8 inches wide at the east end and lying immediately north of the above established boundary line between said lots 1 and 2 and extending across said block 8 from east toward the west, be and the same is forever quieted and confirmed in the plaintiffs, Mrs. Clyde E. Dunn, administratrix of the estate of C. R. Dunn, and Gloria Ann Dunn, a minor, and that the defendant, H. G. Furlow, is hereby perpetually enjoined from erecting a building upon any part of the above strip of land or in any way interfering with the plaintiff's use of the same. It is further ordered and decreed by the court that the cross-complaint of H. G. Furlow against A. A. Ables be and the same is hereby dismissed for want of equity. It is the further order of the court that the defendant, H. G. Furlow, shall pay all costs of this action.''

After a review of the testimony, we have reached the conclusion that the findings and decree of the chancellor are not against a preponderance of the testimony.

The testimony seems clear that the dividing line between these two lots was in doubt and uncertain as early as 1900 when Ables acquired lot 1 from W. C. Dunn. At that time the testimony shows that Clay Block, an experienced surveyor and former owner of lot 1, surveyed lot 1, located the boundary line and pointed out to Ables the division line between lots 1 and 2. A preponderance of the testimony shows, in fact it seems undisputed, that, in 1914, after Porter & Fike had acquired lot 2 they and Mr. Ables definitely established, by an oral agreement among themselves, the dividing line between lots 1 and 2, and dug a well on this line so that one-half of the well would be on lot 1 and the other half on lot 2, the dividing line running directly across the center of the well. This well was owned and used by the owners of these two lots. This line was thereafter

recognized by Ables, the owner of lot 1, and subsequent grantees of lot 2 as the true dividing line, the owner of lot 1 owning and claiming the ground south of this line, and the owner of lot 2 owning and claiming the ground north of this line.

The testimony also shows that appellant, Furlow, had known of the existence of the dividing line, as one witness testified, since he was a small boy. About a month after appellant purchased lot 1 from Ables in 1933, without any previous survey, he (Furlow) marked off the foundation lines and erected a building on lot 1 several feet south of the dividing line and also laid a concrete walk in front of his building to the north and terminated this walk even with the west end of the old concrete foundation wall erected in 1925 by Dunn, which ran across the center of the well.

It seems to be well settled, in this as well as other jurisdictions, that adjoining landowners may by parol fix a dividing line that will bind them and their grantees, although their possession under such agreement may not continue for the statutory period.

In *Robinson* v. *Gaylord,* 182 Ark. 849, 33 S. W. 2d 710, this court said: "This court has held in accord with the weight of authority that where there is doubt or uncertainty or a dispute has arisen as to the true location of a boundary line, the owners of the adjoining lands may, by parol agreement, fix a line that will be binding upon them, although their possession under such agreement may not continue for the full statutory period. *Sherman* v. *King,* 71 Ark. 248, 72 S. W. 571; *Cox* v. *Daugherty,* 75 Ark. 395, 36 S. W. 184, 112 Am. St. Rep. 75; *Deidrich* v. *Simmons,* 75 Ark. 400, 87 S. W. 649; *Payne* v. *McBride,* 96 Ark. 168, 131 S. W. 463, Ann. Cas. 1912B, 661; *O'Neal* v. *Ross,* 100 Ark. 555, 140 S. W. 743; *Butler* v. *Hines,* 101 Ark. 409, 142 S. W. 509; *Malone* v. *Mobbs,* 102 Ark. 542, 145 S. W. 193, 146 S. W. 143, Ann. Cas. 1914A, 479, and *Sherrin* v. *Coffman,* 143 Ark. 8, 219 S. W. 348. . . .

"In *Cutler* v. *Callison,* 72 Ill. 113, the rule itself and the reason for it is clearly stated as follows: 'While

it may be regarded as well settled that the title to real estate cannot be transferred by parol, yet it is a principle well established that the owners of adjoining tracts of land may, by parol agreement, settle and establish permanently a boundary line between their lands, which, when followed by possession according to the line so agreed upon, is binding and conclusive, not only upon them, but their grantees.' . . ."

It is also our view that adjoining property owners may establish a line between their lands by agreement regardless of the lines of the government survey. In *Cox* v. *Daugherty,* 75 Ark. 395, 36 S. W. 184, 112 Am. St. Rep. 75, this court held (quoting headnote): "Persons owning adjacent lands may, by agreement, establish the boundaries between their lands, regardless of the lines of the government survey."

We think from the testimony before us that the dividing line between lots 1 and 2, passing across the center of the well, was established by agreement of the adjacent owners, and followed by possession according to the line so agreed upon, and is binding and conclusive upon them and their successors in title, and, therefore, binding upon appellant, Furlow.

Moreover, we are also of the view that this division line between the two lots, across the old well, is binding upon Furlow for another reason, and that is because a preponderance of the testimony shows that at the time he purchased lot 1 in 1933 he knew the facts as to the agreed location of this division line and of the claims of the adjoining property owners who exercised control and possession of the ground on either side of this division line. We think, therefore, he is bound by the agreement establishing the dividing line between the two lots.

In *Miller* v. *Farmers' Bank & Trust Company,* 104 Ark. 99, 148 S. W. 513, this court said: "The contention that appellant had no notice of the appellee's rights, and that he was therefore an innocent purchaser, is not well taken. His own testimony shows that he knew of the existence of facts in regard to the wall that put him on notice and made it his duty to inquire as to

the title to that part of the wall next to his lot. His testimony shows that he knew that the wall was constructed in a manner so as to admit an adjoining building to be attached to it. Provision was made for joists and sleepers to be let into the wall, showing that the wall was constructed for the purpose of having the building on the adjoining lot attached to the wall in controversy. Upon inquiry and examination of the records, appellant might have easily ascertained the true condition of the title. He was not therefore an innocent purchaser."

No error appearing, the decree is affirmed.
(Appellant to pay costs.)