PEEBLES *v.* McDONALD.
PEEBLES *v.* STARNES.

4-7644                                    188 S. W. 2d 289

Opinion delivered May 14, 1945.

*J. Fred Parish,* for appellant.

*Pickens & Pickens,* for appellee.

McFADDIN, J.   Two cases, each involving a boundary dispute, were consolidated and tried before the circuit court without a jury; and from a judgment for the plaintiff in each case, the defendant, Leola Hall Peebles, has brought this appeal.

The rule of law applicable to both cases is as follows: ''Where there is a doubt or uncertainty, or a dispute has arisen, as to the true location of a boundary line, the owners of the adjoining lands may, by parol agreement, fix a line that will be binding upon them, although their possession under such agreement may not continue for the full statutory time.''

Such was the rule stated by Chief Justice HART in the case of *Robinson* v. *Gaylord,* 182 Ark. 849, 33 S. W. 2d 710; and the following cases were there cited to support the rule: *Sherman* v. *King,* 71 Ark. 248, 72 S. W. 571; *Cox* v. *Daugherty,* 75 Ark. 395, 36 S. W. 184, 112 Am. St. Rep. 75; *Deidrich* v. *Simmons,* 75 Ark. 400, 87 S. W. 649; *Payne* v. *McBride,* 96 Ark. 168, 131 S. W. 463, Ann. Cas. 1912B, 661; *O'Neal* v. *Ross,* 100 Ark. 555, 140 S. W. 743; *Butler* v. *Hines,* 101 Ark. 409, 142 S. W. 509; *Malone* v. *Mobbs,* 102 Ark. 542, 145 S. W. 193, 146 S. W. 143, Ann. Cas. 1914A, 479; and *Sherrin* v. *Coffman,* 143 Ark. 8, 219 S. W. 348.

In 8 Am. Juris. 797, there is this additional statement: "It is essential to the validity and binding effect of such agreement that the boundary line fixed by the agreement be definite, certain, and clearly marked, and that it be made by the adjoining landowners with reference to an uncertain or disputed boundary line between their lands." See, also, *Furlow* v. *Dunn,* 201 Ark. 23, 144 S. W. 2d 31; and see, also, Annotations in 69 A. L. R. 1430, and in 113 A. L. R. 421. A boundary line fixed by agreement of the adjoining landowners is referred to as an "agreed boundary," in contradistinction to the geographical or surveyed boundary. With the law thus stated, we proceed to consider the facts in each of the two cases here.

*Case No. 1—Peebles* v. *McDonald.* It was admitted that the appellant, Leola Hall Peebles, owned the northwest quarter of the southeast quarter of section five, and that the appellee, McDonald, owned the northeast quarter of the southwest quarter of section five. These forty-acre tracts adjoined: the McDonald land lying to the west of the Peebles land. McDonald had a surveyor run the dividing line, and found that Mrs. Peebles was "over the line" at the north end by about one-half of an acre. This encroachment was in the form of a small triangle extending 247 feet north and south, and 153 feet east and west, and being in the extreme northeast corner of the McDonald land. McDonald filed action in ejectment for this half acre. Mrs. Peebles' defense was that the boundary

line between the two forty-acre tracts had been determined by agreement of the prior owners, and the survey could not change the agreed boundary. At the trial it was shown that Mrs. Peebles and her predecessors in title had cultivated west to the woodland, where a fence had been erected. She claimed this fence as the agreed boundary. But the proof failed to show that this fence had ever been agreed upon as the boundary. In fact, the witness, W. T. Sweat, by whom Mrs. Peebles sought to prove the boundary agreement, testified to the contrary. Sweat had formerly owned the McDonald land; and when Sweat was asked if the fence had been agreed upon by him and the former owners of the Peebles land to be the true boundary, he testified that he and the former owners of the Peebles land all the time knew that the fence was not the line, because they had the land surveyed, and determined where the true line should be. There was no proof of any agreement that the fence would be the boundary. At most, the testimony shows that the neighbors had a surveyor to run the line, and then the ancestor of Mrs. Peebles permissibly used the small triangular tract for farming purposes. The other witnesses for Mrs. Peebles, regarding this land, testified as to cultivation thereof by her and her predecessor in title; but these witnesses gave no testimony as to an agreed boundary.

There was substantial evidence (*i. e.*, the surveyor's testimony) that Mrs. Peebles had encroached on the true line; and her attempt to justify this encroachment by the defense of "agreed boundary" failed, because the only person who attempted to testify as to such an agreement between the owners was the witness Sweat, and his testimony failed to show that it was ever agreed that the fence would be accepted as the true boundary. So, on the McDonald land, the appellant, Mrs. Peebles, failed to show any "agreed boundary"; and we affirm the judgment of the trial court, insofar as the Peebles-McDonald appeal is concerned.

*Case No. 2—Peebles* v. *Starnes.* It was admitted that the appellant, Leola Hall Peebles, was the owner of the northwest quarter of the southeast quarter of section

five, and that the appellee, Mrs. Viola Starnes, was the owner of the southwest quarter of the northeast quarter of section five. These forty-acre tracts adjoined: the Starnes land lying to the north of the Peebles land. When McDonald had the line surveyed, in case No. 1, *supra,* he also (as tenant of Mrs. Starnes) had the line surveyed between the Peebles and Starnes tracts; and it was discovered that Mrs. Peebles was in possession of a strip of land extending across the entire south side of the forty acres owned by Mrs. Starnes. This strip was 125.5 feet wide on the west side, and 198 feet wide on the east side, and extended across the entire south side of the forty-acre tract owned by Mrs. Starnes. Mrs. Starnes filed suit in ejectment for this strip of about five acres; and Mrs. Peebles' defense was that the boundary between the Starnes and Peebles tracts had been fixed by agreement, *i. e.,* she offered the same defense as in case No. 1, *supra.*

A study of the record convinces us that Mrs. Peebles established her case on this agreed boundary, and that she should prevail against Mrs. Starnes. The evidence shows that Mrs. Threlkeld owned both forty-acre tracts. When she died in 1928 Mrs. Starnes (a daughter) received the southwest quarter of the northeast quarter of section five (*i. e.,* the north forty acres), and Mrs. Hall (another daughter) received the northwest quarter of the southeast quarter of section five (*i. e.,* the south forty acres). There was a turnrow or road running east and west on what was thought to be the dividing line between the two tracts; and this turnrow was on the north boundary line of the five-acre tract in dispute here. Mrs. Starnes and Mrs. Hall, in taking their lands from the estate of Mrs. Threlkeld, each cultivated to the turnrow or road as the common boundary. Mrs. Starnes testified that she and her sister, Mrs. Hall, discussed having a surveyor run a line, but that they never did so. Mrs. Starnes said:

"A. That old turnrow was already there. My mother had put it there, but she owned both forties. They had not been divided.

"Q. Then you took possession of the north forty and Mrs. Edna (Hall) took the south forty?

"A. Yes, sir.

"Q. And didn't you cultivate it up to the turnrow from the north?

"A. Yes, sir.

"Q. Didn't she cultivate up to the turnrow from the south?

"A. Yes, sir.

"Q. Do you remember some conversation you had with her about rebuilding the house?

"A. Yes. . . . and I said, 'Suppose you put it (the house) over on the other side of the turnrow on your land, right over the turnrow.'

. . .

"Q. She put it on the turnrow?

"A. She put it on the corner south of the turnrow."

The appellee, Mrs. Starnes, thus admitted that Mrs. Hall built her house "just south of the turnrow." The evidence shows that from 1928 Mrs. Starnes cultivated to the turnrow on one side, and Mrs. Hall cultivated to the turnrow on the other. Mrs. Hall (sister of Mrs. Starnes) died in 1938, and the appellant Mrs. Peebles (daughter of Mrs. Hall) inherited the Hall land, and has been in possession up to the turnrow at all times, except for a short period just prior to this suit. Mrs. Peebles lived in the house built by Mrs. Hall, and this house is on the five-acre tract in dispute. An entirely disinterested witness, Mrs. Kirk McDonald, testified as to the conversation between Mrs. Starnes and Mrs. Hall about the location of the house. It was not until several years after Mrs. Hall's death, and not until McDonald had the survey made, that Mrs. Starnes brought this action, which was the first question raised about the boundary since 1928. Even now, Mrs. Starnes concedes that if she should win, Mrs. Peebles could move the house.

There are other facts in the evidence; and from those detailed here, and from the others, we reach the conclusion that Mrs. Peebles proved all the facts essential to an agreed boundary under the principle of law here involved, and that there is no substantial evidence in the record to sustain the finding and judgment for Mrs. Starnes. Therefore, the judgment for Mrs. Starnes is reversed and remanded, with directions to dismiss her complaint, and award to Mrs. Peebles the tract in dispute in the Peebles-Starnes appeal.

As to the costs: since two cases were consolidated, and since the Peebles-McDonald case is affirmed, and the Peebles-Starnes case is reversed: we adjudge one-half of the costs of both courts against Mrs. Peebles, and the other half against Mrs. Starnes.