SLOAN v. AYRES.

4-7712                                     189 S. W. 2d 653

Opinion delivered October 15, 1945.

*D. F. Taylor* and *Eugene Sloan,* for appellant.

*Bruce Ivy,* for appellee.

McFADDIN, J. In the form in which this cause reaches this court on appeal, it is an ejectment action to determine, as between adjoining riparian landowners, the ownership of approximately five acres of land admitted to be accretions formed on the west bank of Little River. The appellants were plaintiffs, and from an adverse judgment, have prosecuted this appeal.

Eugene Sloan, in about 1926, owned the fractional north half of the northwest quarter of section 3. Sloan conveyed to appellant Keiser Supply Company, who in turn conveyed to appellant, M. R. Sisco, so the appellants are the original, intermediate, and present owners, respectively, of what we refer to herein as the ''Sloan land.'' O. M. Fairley was the original owner of the fractional north half of the northeast quarter of section 3, and executed a mortgage which was foreclosed by the mortgagee, and in September, 1931, the appellee Ayres received a commissioner's deed to the fractional north half of the northeast quarter of section 3, which we refer to herein as the Ayres land.

When the United States Government surveyed section 3 many years ago Little River had not been dredged, and was a much wider stream than it now is. The east and west meander lines of Little River were about 600 feet apart. The Sloan land lacked about 8 acres of being a full 80-acre tract, and was located entirely west of the west meander line of Little River. All the Ayres land was east of the east meander line, except a small triangular tract containing 63/100ths of an acre which was west of the west meander line, and was located in the

extreme northwest corner of the Ayres land. In short, when the government survey was made years ago, Little River was meandered as a stream 600 feet wide, and extending northeasterly, and including part of the east side of the Sloan land, and all of the west boundary of the Ayres land except the 63/100ths of an acre.

Since the government survey, the channel of Little River has been dredged so that now the river is only approximately 100 feet wide and the channel is equidistant from the east and west meander lines, leaving accretions on both sides of the present channel. By reason of these accretions on the west bank of Little River, the Sloan land has become more than 80 acres, and the 63/100ths of an acre of the Ayres land on the west bank of Little River has become more than six acres, and five acres of accretions remain in dispute here.

Appellants filed suit in chancery to have a commissioner appointed to divide the disputed accretions between appellants and appellee as the riparian owners on the west bank of the river; and the appellants claim that the appellee was in permissive possession of some of the appellants' part of these accretions. Appellee denied any permissive possession, and (1) claimed title by adverse possession to the extent of his actual holding; and (2) claimed that the boundary had been determined by agreement between Fairley and Sloan many years ago. When the appellee's answer was filed, the chancery court —on motion of appellee, and without recorded objection by appellants—transferred the cause to the circuit court, where it was tried to a jury as an ejectment action. From a verdict and judgment awarding appellee the land in dispute (approximately five acres), there is this appeal; and the appellants say that the only question is the sufficiency of the evidence to sustain the verdict.

I. *The Instructions Are Not Abstracted,* so it will be conclusively presumed that the case was submitted to the jury under instructions correctly governing all issues of law. *Wilson-Ward Co.* v. *Fleeman,* 169 Ark. 88, 272 S. W. 853; *School District* v. *Gardner,* 142 Ark. 557, 219

S. W. 11; *Karatofsky* v. *Fybush Bros.*, 90 Ark. 230, 118 S. W. 1009.

II. *The Sufficiency of the Evidence.* It seems conceded by both sides: (1) that the disputed land would belong to the appellants, unless appellee sustained his claim of adverse possession or agreed boundaries; (2) that appellee's predecessor in title (Fairley) had been in possession of the disputed lands since about 1929, and delivered uninterrupted possession to appellee; (3) that appellee has been in possession ever since he received his commissioner's deed in September, 1931; and (4) that the present litigation was filed on March 10, 1941. Appellee offered two reasons to justify his holding: (a) adverse possession, and (b) agreed boundary.

A. *Adverse Possession.* To sustain his claim of adverse possession, appellee stated in his pleadings and offered testimony of himself and other witnesses that he had been, for more than ten years, in the actual adverse, notorious, hostile, peaceable and exclusive possession of the land. To attack appellee's claim of adverse possession, appellants showed by Sloan that in October, 1931, Fairley, the former owner who had at that time parted with title to the lands in question, had initiated some correspondence with Sloan to persuade him to leave open a road which it was rumored that Sloan was about to close. In this road matter, Fairley persuaded Ayres to write Sloan a letter under date of October 29, 1941, reading in full as follows:

"Mr. O. M. Fairley gave me your letter he received from you a few days ago in regard to your farm on Little River. I bought the Fairley land and some time when you are here will be glad to go over it with you. Also be glad to cooperate with you as to the lines, roads, etc. Sincerely yours, C. D. Ayres."

At the trial Ayres admitted that by this letter he "agreed the disputed line west from the meander line to the river could be fixed at some time convenient to all parties, and it has never been run"; and that from 1931 to shortly before the filing of this suit, Ayres heard

nothing more from Sloan or any of the appellants to indicate any dissatisfaction about the boundary line. On this admission, appellants bottom their case of permissive possession. That is, they claim that by this letter and by Ayres' testimony, he has admitted that he was holding the disputed land until a survey could be made, and was therefore holding permissively and not adversely; and appellants cite 1 Am. Juris. 919: ''Establishment of the Line Tentatively or for Convenience.—There is a substantial agreement in the decided cases that a mere tentative line, made for convenience to await the location of the true line at some future time, or a line established for the convenience of the parties, the position of the true line being recognized, furnishes no basis for adverse possession.''

Also, appellants cite *Britt* v. *Berry,* 133 Ark. 589, 202 S. W. 830, on permissive possession; and *Wilson* v. *Hunter,* 59 Ark. 626, 28 S. W. 419, 43 Am. St. Rep. 63, on possession without intent to hold adversely. On these authorities, and others, appellants claim that Ayres has admitted that his possession of the disputed land was permissive and not adverse.

But the letter of Ayres and his testimony are not conclusive admissions. They constituted circumstances which the jury might consider along with all the other facts and circumstances as to whether it was Ayres' real intention to claim adversely to the extent of his holding. He testified unequivocally that it was his intention to hold adversely, and other witnesses and some circumstances supported him. In the case of *Deweese* v. *Logue,* 208 Ark. 79, 185 S. W. 2d 85, we said:

''It is true, admissions and declarations made by claimant after a title has been acquired by adverse possession cannot operate to defeat it, but they are nevertheless admissible to show the character of possession prior to the lapse of time necessary to give title and bear on the question whether claimant's possession was in fact hostile. See 2 C. J. 272; 2 C. J. S. 'Adverse Possession,' § 221; *Hutt* v. *Smith,* 118 Ark. 10, 175 S. W. 399. In the case of *Russell* v. *Webb,* 96 Ark. 190, 131 S. W. 456,

this court upon rehearing said: -'Any act or conversation recognizing the claim of the original owner after the seven years' occupancy would tend to show that the possession held during the statutory period was not adverse. Though such testimony is not admissible for the purpose of divesting title out of the adverse occupant and revesting it in the original owner, it is perfectly admissible for the purpose of showing that the possession of the occupant was not adverse, and that the occupant did not acquire title by the possession, which was only permissive. *Shirey* v. *Whitlow,* 80 Ark. 444, 97 S. W. 444; *Hudson* v. *Stilwell,* 80 Ark. 575, 98 S. W. 356.' "

There is an Annotation in 97 A. L. R. 14 on ''Adverse Possession,'' and the trend of current authorities is given; and our own case of *Etcherson* v. *Hamil,* 131 Ark. 87, 198 S. W. 520, is reviewed and discussed on page 105 of the Annotation.

To detail the testimony of each witness would unduly prolong this opinion. Appellants' contention is answered when we hold—as we do—that the Ayres letter and testimony were not conclusive admissions against him, but were merely evidence of his intent. They were to be considered by the jury along with all the other evidence in determining whether appellee held adversely. There was sufficient evidence to take the case to the jury on the issue of adverse possession.

B. *Agreed Boundary.* The appellee introduced evidence by several witnesses that Sloan and Fairley (the original riparian owners) had agreed on a boundary line by which Fairley received all the land here in dispute, and that Fairley's tenants cultivated to that boundary line, and that appellee has all the time occupied to the extent of that line. Sloan denied all such evidence about an agreed boundary. But, at least, a case was made for the jury on this issue of agreed boundary, because appellee brought his contentions within the rule stated in *Peebles* v. *McDonald,* 208 Ark. 834, 188 S. W. 2d 289: ''Where there is a doubt or uncertainty, or a dispute has arisen, as to the true location of a boundary line, the owners of the adjoining lands may, by parol agreement,

fix a line that will be binding upon them, although their possession under such agreement may not continue for the full statutory time."

Thus, on either issue—adverse possession or agreed boundary—there is substantial evidence to sustain the verdict of the jury.

Affirmed.