WALTERS v. MEADOR.

4-8138                                   200 S. W. 2d 24

Opinion delivered April 14, 1947.

*Ed B. Cook, Claude F. Cooper* and *T. J. Crowder,* for appellant.

*Frank C. Douglas,* for appellee.

ED. F. McFADDIN, Justice. This is a boundary line dispute between neighbors. An exemplification of the

Golden Rule on both sides of the boundary would, undoubtedly, have prevented this expensive litigation; but until the Golden Rule is practiced universally, courts do afford a better redress for grievances than did the old method of "self-help."[1] So, humanity is making some progress. But—Back to the case at bar:

Lot 10, block C of Morris' Addition to Blytheville has a frontage of 75 feet on Fifth Street, and a depth of 140 feet. Originally, Mr. Langdon owned the entire lot; but in 1916 he conveyed the south 35 feet to Weems, through whom appellant, Walters, claims by *mesne* conveyances. Later, Langdon conveyed the north 40 feet to some other person, through whom appellee, Meador, claims by *mesne* conveyances. In short, appellant, Walters, has a deed to the south 35 feet, and appellee, Meador, has a deed to the north 40 feet.

Appellee brought action in ejectment, claiming that he was the owner of the north 40 feet, and that appellant was encroaching on appellee for a driveway and garage site amounting to a strip about four feet wide for the depth of the lot. Appellant defended the ejectment suit, and claimed the disputed strip (a) by adverse possession, and (b) by agreed boundary. The cause was tried to a jury, and resulted in a verdict and judgment for appellee; and appellant is appealing. Three questions are presented in the brief of appellant. They are: (1) the correctness of the appellee's survey; (2) appellant's claim of adverse possession; and (3) appellant's claim of agreed boundary.

We hold that all three of these questions were disputed issues of fact, and that the verdict of the jury settled each and all of these questions adversely to appellant, and that there was sufficient evidence to sustain the verdict. This opinion might well stop with the above

[1] Webster's Dictionary says of "self-help" in law: "the right or fact of redressing or preventing wrongs by one's own action without recourse to legal proceedings."

Blackstone's *Commentaries*, Vol. III, p. 3, discusses the redressing of private wrongs by act of the parties. One such method of redress is "by entry on lands and tenements, when another person without any right has taken possession thereof."

statement, but we discuss each question more fully to indicate the reasons compelling our conclusion.

I. *Correctness of Appellee's Survey.* Appellee purchased the north 40 feet of lot 10 from Mrs. Shonyo in 1944. Appellant had purchased the south 35 feet of lot 10 from a Mr. Thomas in 1941, but appellant had been away in the Navy. About the time appellee moved into his house in 1944, the appellant returned from the Navy, and resumed possession of his house. Between the houses there was a driveway which appellant refused to allow appellee to use. Thereupon, appellee secured the services of a surveyor (Mr. Cobb), who undertook to establish the property line between the parties. Cobb indicated the boundary by stobs, which appellant promptly removed. At the trial, Cobb told the jury of his experience as a surveyor; he detailed where he started with his survey, and how he determined the line between the litigants. It was not shown that Cobb was the county surveyor, so appellant contends that Cobb's survey was inadmissible as evidence because of § 2418, Pope's Digest, which reads in part:

"No survey made by any person except the county surveyor or his deputy shall be considered as legal evidence in any court of law or equity, . . ."

We hold against appellant's contention; and, for authority, quote what was said in *Reeves* v. *Jackson,* 207 Ark. 1089, 184 S. W. 2d 256, in regard to the same argument as appellant is here making:

"This court has ruled adversely to the appellants' contention. In the case of *Smith* v. *Leach,* 44 Ark. 287, it was held that a county surveyor's record of the survey made by him is only *prima facie* evidence of the correctness of the survey, and parol evidence of other surveys is admissible. To the same effect, see *Jeffries* v. *Hargis,* 50 Ark. 65, 6 S. W. 328; *Russell* v. *State,* 97 Ark. 92, 133 S. W. 188; *Buffalo Zinc & Copper Co.* v. *McCarty,* 125 Ark. 582, 189 S. W. 355; *Sherrin* v. *Coffman,* 143 Ark. 8, 219 S. W. 348."

II. *Adverse Possession.* Appellant insists that those through whom he claims have been in actual and adverse

possession of the driveway and ground on which the garage is located ever since 1916. Many witnesses testified to the actual possession; but there was sharp dispute as to whether the appellant's predecessors in title had occupied the strip *adversely* or *by permission* of the appellee's predecessors in title. Mrs. Anna Shonyo owned the appellee's property from 1933 to 1944; and she testified that, during those years the driveway was used by the occupants of both houses by common consent. She was interrogated, and made answer as follows:

"Q. Tell the jury if there was any question raised at any time, from the time you acquired the north 40 feet and claimed it, by any owner or tenant of the owner of the south 35 feet? A. No, there was never any objection. . . . Q. State what the tenants in the two properties, from your own knowledge and observation, did with that piece of ground? A. I suppose they both used it as a driveway. I know I did. I used that drive up there and turned in the place where the concrete is."

The testimony of Mrs. Shonyo, and other testimony in the record, made a jury question as to whether the possession of appellant and his predecessors in title was *permissive*. Credibility of the witnesses was also for the jury. So we hold that there was substantial evidence to sustain the jury's verdict against appellant on the issue of adverse possession.

III. *Agreed Boundary.* Finally, appellant contends that the adjoining owners, many years ago, agreed on a boundary line, and—based on that agreement—appellant's predecessors in title constructed and have continued to use the garage; and appellant, therefore, contends that the north side of this garage building establishes the line. To support his contentions on the issue of agreed boundary, appellant cites *Sloan* v. *Ayres,* 209 Ark. 119, 189 S. W. 2d 653; *Hoyer* v. *Edwards,* 182 Ark. 624, 32 S. W. 2d 812; *Miller* v. *Farmers' Bank & Trust Co.,* 104 Ark. 99, 148 S. W. 513; *Cox* v. *Daugherty,* 62 Ark. 629, 36 S. W. 184; and *Jordan* v. *Deaton,* 23 Ark. 704.

In *Sloan* v. *Ayres, supra,* we quoted from *Peebles* v. *McDonald,* 208 Ark. 834, 188 S. W. 2d 289, as follows:

" 'Where there is a doubt or uncertainty, or a dispute has arisen, as to the true location of a boundary line, the owners of the adjoining lands may, by parol agreement, fix a line that will be binding upon them, although their possession under such agreement may not continue for the full statutory time.' "

As an abstract proposition, the rule of law is as the appellant states; but the appellee offered sufficient evidence to take this case out of the quoted rule. The testimony of Mrs. Shonyo was to the effect that from 1933 to 1944 there was no agreed boundary line. Mrs. Mattie E. Watts testified that from 1939 to 1942 she occupied, as a tenant, the property now owned by Walters, and that this was during the time that Mrs. Shonyo still owned what is now the Meadors property. Mrs. Watts testified:

"A. There is not a thing I could say about the driveway. Everybody used the drive while I was there—for both houses. Q. Tenants from both houses? A. Tenants from both houses, and I didn't know who the driveway belonged to. Q. Did Mr. Thomas own the property while you lived there? A. Mr. Thomas owned the property while I lived there. I rented from him for four years. Q. And Mrs. Shonyo owned the other? A. Yes, sir. Q. Tell the jury if there was any fence between the two properties during the time you lived there? A. No, sir."

This testimony supports Mrs. Shonyo's testimony, and shows that there was neither an established and agreed boundary line, nor a claim to any clearly marked or designated line. In *Peebles* v. *McDonald, supra,* in discussing one of the essentials of an agreed boundary, we said:

"In 8 Am. Juris. 797, there is this additional statement: 'It is essential to the validity and binding effect of such an agreement that the boundary line fixed by the agreement be definite, certain, and clearly marked, and that it be made by the adjoining landowners with reference to an uncertain or disputed boundary line between their lands.' See, also, *Furlow* v. *Dunn,* 201 Ark. 23, 144 S. W. 2d 31; and see, also, Annotations in 69 A. L. R. 1430, and in 113 A. L. R. 421."

It is, thus, clear that the appellee offered evidence sufficient to support the jury's verdict, which was against the appellant's claim of an agreed boundary.

The judgment of the circuit court is affirmed.