O'NEAL v. ROSS.

Opinion delivered November 6, 1911.

1. ADVERSE POSSESSION—MISTAKE AS TO BOUNDARY.—When a land owner, through mistake as to his boundary line, takes possession of land of

an adjacent owner intending to claim only to the true boundary, such possession is not adverse, and, though continued for the statutory period, does not divest title; but when he takes possession under the belief that he owns it, incloses and holds it continuously for the statutory period under claim of ownership without any recognition of another's right thereto, his possession is adverse, and, if continued for the statutory period, will divest the title of the former owner. (Page 560.)

2. APPEAL—CONCLUSIVENESS OF CHANCELLOR'S FINDING.—A chancellor's finding of facts will not be disturbed on appeal unless it is against the weight of the evidence. (Page 560.)

Appeal from Boone Chancery Court; *T. Haden Humphreys*, Chancellor; affirmed.

STATEMENT BY THE COURT.

George W. O'Neal instituted an action of ejectment in the Boone Circuit Court against John C. Ross. The complaint alleges that he is the owner of lot 12 and the east half of lot 13 in block 10 in the town of Harrison, as originally platted, and that the defendant, Ross, is in the unlawful possession of a strip of land on the north side thereof five feet three inches wide at the east end, and four feet wide at the west end.

The defendant, Ross, answered and denied that plaintiff had title to said strip of land, and says that he is entitled to it, and has held possession thereof for the statutory period of seven years. By consent of the parties, the case was transferred to the chancery court.

The plaintiff deraigns title by mesne conveyances from the United States Government, and the description contained in the deeds is lot 12 and east half of lot 13 in block 10 in the town of Harrison, as originally platted. His lots front south, and according to the plat extend north one hundred and twenty feet.

The defendant is the owner of lots 6 and 8 in said block 10, and his lots run east and west, lot 8 being immediately north of plaintiff's lots. For some time prior to 1896, Robert Rush owned the lots now owned by the plaintiff, and Arch Stockton was the owner of lots 6 and 8, and resided on them. A wire fence was at that time built on what was supposed to be the boundary line, and Rush testified that neither he nor Stockton intended to claim beyond the true boundary line. On the 3d of April, 1896, Rush conveyed lot 12 and the east half of lot

13 to Arch Stockton, and on the 26th day of November, 1900, Stockton conveyed the lots to the grantors of the plaintiff. The deed to the plaintiff was made on the 7th of October, 1907.

Afterwards he caused two surveys of his lots to be made, one by Hamilton in March or April, 1908, and the other by Tom Jones in January, 1910. Both these surveys fixed the boundary line so as to include the strip of land for which this suit is brought. Dr. Kirby owns a lot on block 2 just east of said block 10, and has erected a stone house thereon. The testimony on the part of the plaintiff shows that while the survey was being made, the defendant contended that a line extending due east from the north wall of Dr. Kirby's building would be the true boundary line between him and the plaintiff. The testimony of the plaintiff also shows that such extended line would be the line fixed by the surveyors, Hamilton and Jones.

The plaintiff also introduced the deposition of W. P. Conley. He testified that on the 30th of September, 1901, he conveyed lots 6 and 8 in said block 10 to the defendant, Ross. In answer to interrogatory 5, "State whether or not at any time while you owned said lots 6 and 8 in said block 10 you ever claimed title to any land except that called for by your deed, and by the deed you and your wife made to said Ross," he said: "No, unless the fence was over the line."

He further stated that he does not remember that he ever represented to said Ross that he ever claimed any land except that called for in his deed, and does not remember that the fence was ever mentioned. On cross examination, he stated that at the time he bought the lots, and at the time he sold them to Ross, he regarded the fence on the south as being on the line.

Mrs. Mattie A. Stockton for the defendant testified: "I am the widow of Arch Stockton. He did not own lot 12 and the east half of lot 13 at the same time he owned lots 6 and 8. There was a fence separating lots 6 and 8 from lot 12 and the east half of lot 13. We considered that we owned and sold what was under fence just as it stood between the lots. When my husband sold lots 12 and the east half of lot 13, he did not intend to convey any land north of the fence."

The defendant, John C. Ross, testified: "I resided on lots

6 and 8 in block 10, and have resided there since I purchased the property from W. B. Conley on September 30, 1901. The lines were pointed out to me when I purchased. the property. There was a wire fence on the south end of it, and this fence was shown to me to be the boundary line on the south side of the property. The fence was a five-strand barb wire fence, and is in the same place now that it was when I took possession of the property. I took possession of the ground in the inclosure, claiming to be the owner. In May, 1902, I sold the lots to E. D Cramer, and made him a deed to them. In about a year Cramer reconveyed the property to me, and I have been the owner of it ever since. In trading with Cramer, I showed him the fence as the boundary line. During the year that the title was in Cramer, I still resided on the property, renting it from him. The entire ground I now claim has been in a substantial inclosure since I first purchased it in September, 1901." On cross examination, he was asked: "Why did you not put it in your deed that you were buying to the fence, and that the fence was the line?" He answered: "I did not consider it necessary. They told me the fence was on the line."

He stated that he thought the fence was on the true line when he purchased the property, and has ever since claimed to own to the fence. In his cross examination appears the following question and answer:

"Q. According to Hamilton's survey, your fence is on lot 12 and the east half of lot 13, is it not? A. I think so. At the time of Hamilton's survey, I claimed to the fence, and I intended to claim the land, regardless of the survey, or anything else."

He also said he was present when the Jones survey was made, and that he considered that his survey is not the true line. He denies that at the time of Hamilton's or Jones's survey he said he would accept a line continuing east with the line of the north wall of the Kirby building.

E. D. Cramer, for the defendant, testified: "I purchased lots 6 and 8 in block 10 from the defendant, Ross, in May, 1902, and in about a year deeded them back to him. Ross continued to occupy the property while I owned it. When I purchased the property, Ross showed me the lines and fences. While he did not tell me that the fences

were on the line, I took them to be, and he did show me how much ground there was. I understood that I was purchasing all the land in the enclosure, and during the time I owned it I claimed all the land inside the enclosure. The deed made from Ross to me, and from me back to Ross, described the property conveyed as lots 6 and 8 in block 10 in the original town of Harrison. I do not suppose I expected anything more than the deed called for, but I supposed that the deed called for the land enclosed, and that I was getting it. I claimed all that was inside the fence, and did so because I thought the fence was on the line."

Tom Jones, the surveyor, ran a line east from the north wall of Dr. Kirby's building, and testified that the fence was about on such extended line. Other evidence introduced by the defendant, tended to show that the first fence built by Stockton and Rush was torn down, and the present fence erected a few feet north of it on the line where it now is and on a line established by a surveyor named Brandt. That the present fence was erected several years prior to the time the defendant purchased lots 6 and 8, and has ever since been recognized as the division line between lots 6, 8 and lot 12, and the east half of lot 13.

The chancellor found in favor of the defendant, and the plaintiff has appealed.

*J. W. Story*, for appellant.

A possession which seeks to hold only to the true boundary line is not adverse. To make such possession adverse, there must be an intention on the part of the holder to claim the land without reservation or saving as to the location of the true line. 15 Ark. 298; 59 Ark. 628; 80 Ark. 444; 15 S. W. (Mo.) 341; 1 Cyc. 1037; 77 Ark. 224.

*G. J. Crump*, for appellant; *Guy L. Trimble*, of counsel.

1. The burden rested on appellant to show title to the land; otherwise in ejectment he could not recover. If that is shown and appellee is put to the proof, then a review of the evidence makes it clear that his possession of the land has been open, notorious, adverse and continuous to the line established by the fence for more than the statutory period.

2. The fence is the boundary by consent, by buying and

selling with reference thereto, and long acquiescence.   5 Cyc.
934; 935 (D.); *Id.* 540;  75 Ark. 399;  71 Ark. 248;  23 Ark.
705; 99 Ark. 128;  24 *Id.* 406.

    HART, J., (after stating the facts).   In the case of *Good-
win* v. *Garibaldi*, 83 Ark. 74, the court, speaking through Mr.
Justice RIDDICK, said:

    "When a land owner, through mistake as to his boundary
line, takes possession of land of an adjacent owner, intending
to claim only to the true boundary, such possession is not
adverse, and, though continued for the statutory period, does
not divest title; but when he takes possession of the land under
the belief that he owns it, incloses it and holds it continuously
for the statutory period under claim of ownership without any
recognition of the possible right of another thereto on account
of mistake in the boundary line, such possession and holding
is adverse, and, when continued for the statutory period, will
divest the title of the former owner, who has been thus excluded
from possession.   *Shirey* v. *Whitlow,* 80 Ark. 444;  *Wilson* v.
*Hunter,* 59 Ark. 626;  1 Cyc. 1038 and cases cited;  *St. Louis
S. W. Ry. Co.* v. *Mulkey, ante* p. 71.

    In cases where a fence is believed to be on the true line, and
the claim of the purchaser is to the fence, even though the
established division is erroneous, there is a clear intention to
claim to the fence as the true line, and the possession does not
originate in an admitted possibility of a mistake.   In the case
before us, the testimony of the defendant shows that, prior to
his purchase of the land in September, 1901, the fence had been
built upon the line established between lots 6 and 8, and lot
12 and the east half of lot 13 by a survey made by one Brandt.

    When lots 6 and 8 were purchased by the defendant, they
were enclosed, and he claimed to the fence between the property
he purchased and that now owned by the plaintiff.   He claimed
to a line visible and known, and his actual possession was co-
extensive with that boundary.   The testimony on the part of
the defendant shows that he took possession of the land under
the claim and belief that it was his own, and has held it by ad-
verse possession for the statutory period of seven years.

    The court found that there was no equity in plaintiff's
complaint, and dismissed it.   This amounted to a general
finding of the facts in favor of the defendant, and, according

to the settled law of this State, the finding of fact made by a chancellor will not be disturbed on appeal, unless it is against the weight of the evidence.

We have carefully considered the testimony as shown by the record, and are of the opinion that the finding of the chancellor is not against the preponderance of the evidence.

The decree will therefore be affirmed.