## MALONE *v.* MOBBS.

### Opinion delivered February 12, 1912.

1. WATERS—APPORTIONMENT OF ALLUVION.—The rule for apportioning alluvion among riparian proprietors is (1) to measure the whole extent of the ancient bank or line of the river, and compute how many rods, yards or feet each riparian proprietor owned on the river line: (2), supposing the former line to amount to 200 rods, to divide

the newly formed line into 200 equal parts, and appropriate to each proprietor as many portions of this new river line as he owned rods on the old; then, to complete the division, lines are to be drawn from the points at which the proprietors respectively bounded on the old to the points thus determined as the points of division of the newly formed shore.    (Page 544.)

2.  APPEAL AND ERROR—REVERSAL—REOPENING CASE.—Where an equitable cause was tried upon an erroneous theory, the decree will be reversed with directions to take additional testimony if desired. (Page 545.)

3.  BOUNDARIES—PAROL AGREEMENT—EFFECT.—Where there is a doubt, dispute or uncertainty as to the true location of a boundary line, the parties may by parol fix a line which will, at least when followed by possession with reference to the boundary so fixed, be conclusive upon them, although the possession is not for the full statutory period. (Page 546.)

Appeal from Perry Chancery Court; *Jeremiah G. Wallace,* Chancellor; reversed.

*W. L. Moose* and *Sellers & Sellers,* for appellants.

1.  Agreed boundaries are favored, where accretions are divided amicably, by the courts, and such divisions are held valid and binding, although not following the rules of law.    13 R. I. 76; 10 Gray 521; 18 N. J. Eq. 391; 10 N. Y. 412; 131 S. W. 463; 130 Ia. 618.    The proof of agreement here is stronger than in 131 S. W. 463.

2.  The suit is barred.

*P. H. Prince* and *R. W. Robins,* for appellee.

1.  Accretions are held by the owners of the land upon which they formed as a compensation for possible loss from the same source.    1 Am. & E. Enc. Law. (2 ed.) 476; 2 Black. Com. 262; 2 W. A. L. 57; 25 Ark. 120; 3 Current Law, 1746.

2.  The weight of authority sustains the division of accretions by a line running at right angles from the point on the old river bank, where it was intersected by the dividing line between the original tracts.    19 Ohio C. C. 709; L. R. 6 Ch. 551; 4 Current Law, 1315.

3.  There is no proof of agreed boundaries.    Nor can appellants claim possession of any land outside of the inclosed portions of the disputed triangle.    83 Ark. 377.    The adverse possession was not proved.    84 Ark. 587.

HART, J.    Appellants and appellee are the owners of adjoining tracts of land on the Arkansas River in Perry County.

Arkansas. This suit was instituted by appellee against appellants in the chancery court for the purpose of settling the boundary between them to the accretions formed in front of their lands, and no question has been raised as to the jurisdiction of the court.

The chancellor seems to have held that the boundary between appellants and appellee as to the accretions was to be determined by extending a line at right angles from the boundary between them on the old river bank to the present bank of the river. A decree was rendered accordingly, and the case is here on appeal.

The difficulty of establishing an absolute rule for the apportionment of accretions between coterminous proprietors under all circumstances has been generally recognized by the courts, and the principle observed is to make such a division as will give to the proprietors of the new shore line such portion thereof as they possessed of the old shore line before the formation of the alluvion. In *Deerfield* v. *Arms*, 17 Pick. (Mass.) 41, 28 Am. Dec. 277, this rule is laid down for the division of alluvion between the contiguous riparian proprietors—First: to measure the whole extent of the ancient bank or line of the river, and compute how many rods, yards or feet each riparian proprietor owned on the river line: Second: supposing the former line for instance to amount to 200 rods, to divide the newly formed bank or river line into 200 equal parts, and appropriate to each proprietor as many portions of this new river line, as he owned rods on the old; then, to complete the division, lines are to be drawn from the points at which the proprietors respectively bounded on the old to the points thus determined as the points of division of the newly formed shore.

Commenting on this method of apportionment the court said: "This mode of distribution secures to each riparian proprietor the benefit of continuing to hold to the river shore whatever changes may take place in the condition of the river by accretion, and the rule is obviously founded in that principle of equity upon which the distribution ought to be made." See also *Northern Pine Land Co.* v. *Bigelow*, (Wis.) 21 L. R. A. 776, and cases cited; *Hathaway* v. *Milwaukee*, (Wis.) 9 L. R. A. (N. S.) 778; 122 Am. St. Rep. 975; *Johnson*

v. *Jones,* 1 Black (U. S.) 209; *Bachelder* v. *Keniston,* 51 N. H. 496; 12 Am. Rep. 493; 5 Cyc. 888, and cases cited; 29 Cyc. 353.

Hence it will be seen that this rule has been generally recognized as the proper one to follow unless there are such irregularities in the shore lines as to make it inequitable, and we adopt it as the general rule in this State. This rule of apportionment has been modified under pecular circumstances, as where the shore line happens to be elongated by deep indentations or sharp projections. *Hopkins Academy* v. *Dickinson,* 9 Cush. 552, and cases cited. 1 Am. & Eng. Enc. Law & Prac. p. 808, note 14 (a).

In this case, however, there are no special circumstances that call for a departure from or modification of the general rule. It follows that the chancellor proceeded on an erroneous theory in the division of the accretions. The measurement made by the two surveyors of the appellee were not made with reference to the rule above announced by the court, and appellee challenges the correctness of the survey and estimates made by the surveyor of the appellants. In the application of the rule in *Long* v. *Abeles,* 77 Ark. 156, the decree will be reversed and the cause remanded and reopened so that the parties, if so advised, may take additional proof on the measurement of the accretions under the rule adopted by the court. It is so ordered.

## ON REHEARING.

### Opinion delivered March 18, 1912.

HART, J. In our original opinion it was held that the rule of apportioning to each abutting proprietor such proportion of the new shore line as his ownership to the original shore line bears to the whole line on which the accretion abuts and dividing the area to be proportioned by connecting the points on the new shore line is well recognized as a proper one to follow unless it results in such irregularities as to make it inequitable.

It is insisted by counsel for appellee that the rule adopted by the court is erroneous. But, after a careful consideration of the authorities bearing on the question, we adhere to our original opinion, and deem it well sustained both upon principle and the adjudicated cases.

In the original opinion we did not refer to or discuss the testimony relating to an agreed boundary line of the accretions. A majority of the court was then of the opinion that the testimony was not sufficient to establish an agreement as to the boundary line between the accretions; and for that reason it was not necessary to discuss it because we decided for appellants, who were insisting that the testimony was sufficient. A re-examination of the testimony leads us to the conclusion that the contention of appellants was correct on this point.

H. W. Burrows was the former owner of the Mobbs land, and Levin Hill was the former owner of the Malone lands. Burrows was dead at the time of the trial of this case in the lower court. Levin Hill testified in behalf of Malone, as follows:

"When I sold the timber on the accretions to this land. I went to see Mr. Burrows about establishing the boundary line between the accretions of our respective lands. Mr. Burrows and myself agreed that the extension of the north and south line as it existed on the original tracts of land should be the boundary line of our accretions. Mr. Burrows went ahead and pointed out the line, and I followed and blazed the trees. The line so established was agreed by us to be the boundary line between our accretions, and was thereafter recognized by us as the true line. Burrows afterwards deadened the timber on his land up to this line, and I cut the timber off of mine and cleared it up to the line. This line was established and blazed out to the sandbar, and was afterwards recognized by Burrows and myself as the true line between up, up to the time I sold to the appellant." E. A. Wolverton, testified: "Mr. Burrows in his lifetime told me that he and Mr. Levin Hill had agreed that the section line between them should be extended north over the accretions, and that the line so extended should be the boundary line between them as to the accretions." Hence it will be seen that there was a definite settlement between them as to the boundary line of the accretions and the testimony is practically undisputed.

In the case of *Payne* v. *McBride,* 96 Ark. 168, we held: "Where there is doubt, dispute or uncertainty as to the true location of the boundary line the parties may by parol fix a line which will, at least when followed by possession with reference to the boundary so fixed, be conclusive upon them

although the possession is not for the full statutory period." To the same effect is *O'Neal* v. *Ross,* 100 Ark. 555; *Butler* v. *Hines,* 101 Ark. 409.

It follows that the line agreed upon by Burrows and Hill is the true line between the parties as to the accretions.

The judgment heretofore rendered is modified to this extent, and the chancellor is directed to enter a decree fixing the boundaries between appellants and appellees as to the accretions on the agreed line.