JEWEL v. SHILOH CEMETERY ASSOCIATION.

5-457                                    273 S. W. 2d 19

Opinion delivered December 6, 1954.

*George F. Edwardes,* for appellant.

*Preston E. Dowd,* for appellee.

ED. F. McFADDIN, Justice.   This is a boundary line dispute; and the Chancery Court held that a line agreed to many years ago was to be accepted instead of a line recently surveyed.   To reverse that decree, appellants (Jewel and wife) bring this appeal against appellee, Shiloh Cemetery Association (hereinafter called "Shiloh").

In 1904 the admitted owner conveyed two acres to the School District.   In 1938 the School District conveyed to appellee, Shiloh, the west acre of the 2-acre tract, and retained the east acre.   The land had been surveyed and a boundary determined, and Shiloh built a caretaker's house on what was thought to be within the boundaries of the west acre.   The School District sold the east acre to J. C. Vanderbilt; and in 1946 or 1947 a road was built on what was regarded by all parties as the common boundary line.   Vanderbilt as owner of the east acre, and Shiloh as owner of the west acre, agreed that the road was the boundary.   The care-taker's house owned by Shiloh was and is west of the road.   When

Vanderbilt sold the east acre to Blanke, he showed him the road as the boundary. Blanke conveyed to Nall; and Jewel claims under an oral contract from Nall. In 1952, shortly before the filing of this suit, Jewel or Blanke had a survey made of the line between the east acre and the west acre; and appellants insist that the true line is not the road, but the newly surveyed line west of the house that Shiloh had built.

At the conclusion of the evidence (heard *ore tenus*) the Chancellor said in part:

"Gentlemen, it may be true that the pleadings in this case leave something to be desired, but this is a Court of Equity and this matter has been fully developed on both sides, and therefore the Court is going to consider the pleadings amended to conform to the proof, and settle all phases of this case. . . . Any view you may take of this record, the plaintiff, Shiloh Cemetery Association, is entitled to have possession of—and its title quieted to—the parcel of land consisting of approximately one acre lying west of the division drive and upon which the care-taker cottage is located, as staked out in 1905 when stakes or stobs were placed in the corners. . . ."[1]

I. *Amending the Pleadings.* That the Chancery Court had the right to treat the pleadings as amended to conform to the proof is well recognized. See § 27-1160, Ark. Stats.; *Rucker* v. *Martin*, 94 Ark. 365, 126 S. W. 1062; *Duff* v. *Ayers*, 156 Ark. 17, 246 S. W. 508; and

[1] In the decree prepared by the Chancellor after the attorneys had failed to agree on the form of the decree, there were these specific findings: "That the survey which Blanke had made in 1952 does not agree with the previous surveys, but the stakes set in 1905 do agree with the result of a survey made by Otis Thornton in 1934 or 1935; and the court has serious doubts as to the accuracy of the 1952 survey; that regardless of which survey or surveys are technically correct or incorrect, the Court finds that the parties are bound by the division line as it appears on the ground to-wit, the driveway, in view of the fact that the plaintiff, Shiloh Cemetery Association has had actual, open and exclusive possession, under claim of ownership, of the cottage and the land upon which it sits from 1938 up to and including January 12, 1952, and in view of the further fact that the drive-way was agreed upon as the division line by defendants' predecessor in title, and that all the defendants, except J. M. Nall and wife, actually knew that the driveway was there and was recognized as the line when they bought or contracted to buy."

*DeSoto Life Ins. Co.* v. *Jeffett,* 210 Ark. 371, 196 S. W. 2d 243. The appellants have failed to show that they were prejudiced by such recognized procedure.

II. *Agreed Boundary.* It is settled by many rulings of this Court that a boundary agreed to between parties and respected for many years will prevail, though such boundary may later prove to be other than the true line between the tracts. In *Goodwin* v. *Garibaldi,* 83 Ark. 74, 102 S. W. 706, Mr. Justice RIDDICK, in sustaining a long existing boundary between adjacent owners, quoted the classic language found in *Cunningham* v. *Brumbach,* 23 Ark. 336:

". . . better that ancient wrongs should go undressed, than that ancient strife should be renewed."

*Robinson* v. *Gaylord,* 182 Ark. 849, 33 S. W. 2d 710, is another case in which an old line was sustained even against a new survey. In *Peebles* v. *McDonald,* 208 Ark. 834, 188 S. W. 2d 289, we cited a long line of Arkansas cases supporting this statement:

"Where there is a doubt or uncertainty, or a dispute has arisen, as to the true location of a boundary line, the owners of the adjoining lands may, by parol agreement, fix a line that will be binding upon them, although their possession under such agreement may not continue for the full statutory time."

In the case at bar the preponderance of the evidence shows that when the road or driveway was constructed, it was agreed by Shiloh, as the owner of the west side, and Vanderbilt, as the owner of the east side, that the road or driveway was the division line between the two tracts. Possession was taken and has always been held by Shiloh of the land west of the roadway, and possession under such agreement brings Shiloh within the rule of the cases heretofore cited.

III. *Sale by the School District to Shiloh.* The appellants say that the School District did not comply with the requirements of § 10-701, Ark. Stats., and § 10-502, Ark. Stats., when the School District sold the acre to

Shiloh in 1938; and therefore appellants claim that Shiloh's title is defective. To sustain such contention appellants cite *State* v. *Wilson,* 181 Ark. 683, 27 S. W. 2d 106, and *Reeves* v. *Conger,* 103 Ark. 446, 147 S. W. 438.

Irrespective of other answers to appellants' attack as now made on the sale of the acre by the School District in 1938,[2] the obvious answer is that § 10-701 and § 10-502, Ark. Stats., relate to an entirely different kind of "school land" than that involved in this case. Those sections relate to "State school land." Here the School District acquired the two acres by purchase from an individual, and later sold one acre to Shiloh. The power of a School District to sell property so acquired by it was discussed in *Scott* v. *Magazine Special School Dist.,* 173 Ark. 1077, 294 S. W. 365. In that case, decided in 1931, the Court cited § 8942, C. & M. Digest, as giving the Directors of the School District the power to sell any real estate *belonging to the District;* and under that Section, this Court said:

"The directors had the power to sell the schoolhouse and to determine the best means of doing it. The purchaser has nothing to do with the determination of the Directors in selling the property and is not responsible for their action. He is only required to pay the purchase price as agreed upon."

The § 8942 of C. & M. Digest was supplanted by Act 169 of 1931, which is known as "The School Law"; but § 97 of that 1931 Act was the governing law in 1938 when the School District sold the acre here involved to Shiloh; and the said § 97, as now contained in § 80-509, Ark. Stats., has this germane language equally as strong as that contained in § 8942 of C. & M. Digest:

"The Board of School Directors of each District in the State shall be charged with the following powers and perform the following duties: . . . (b) purchase buildings, or rent school houses and sites therefor, and sell, rent or exchange such sites or school houses. . . ."

---

[2] Some such suggested answers are: (a) estoppel; (b) laches; and (c) failure to present any such attack in the Trial Court as is now urged on appeal in this Court.

So the School District in 1938 had the power to make the sale to Shiloh of the land here involved.

The appellants have argued other points which we have examined and have also found to be without merit.

The decree is affirmed, and the Chancery Court is empowered to give appellee possession and all other relief.