CLAUSS v. BAUMGARTNER.

5-1291 305 S. W. 2d 116

Opinion delivered July 1, 1957.

[Rehearing denied Sept. 30, 1957]

*M. Steele Hays* and *Richard Mobley,* for appellant.

*Robert J. White,* for appellee.

ED. F. McFADDIN, Associate Justice. This case involves accretions claimed by adjacent riparian owners

on the west bank of the Arkansas River in Logan County. The appellants insist that the accretions should be apportioned according to the rule stated in *Malone* v. *Mobbs,* 102 Ark. 542, 145 S. W. 193, 146 S. W. 143 and reiterated in *Hamilton* v. *Horan,* 193 Ark. 85, 97 S. W. 2d 637. The appellees recognize the rule of these cases; but claim that in this case there was an agreement as to the boundary line, and that such agreement is decisive of the case.[1]

Appellants, Mr. and Mrs. Clauss, owned lands in Section 3, Township 8 North; and appellees, Baumgartner *et al.* owned lands adjacent to the *north* and being in Section 34, Township 9 North. The Arkansas River is the east boundary of the lands in said sections.[2] Mr. and Mrs. Clauss filed suit on January 13, 1955, claiming that the Arkansas River, in moving easterly from 1927 to 1955, had added accretions on the west bank; and that under the rule of apportionment stated in the Arkansas cases previously cited, the line of division of such accretions would give Mr. and Mrs. Clauss river frontage of approximately one-quarter of a mile extending northerly into the lands now in Section 34. The defendants, Baumgartner *et al.,* claimed, *inter alia,* that it had been agreed many years ago by the owners of Section 34 and Section 3, that the south boundary line of Section 34 (being also the north boundary line of Section 3) extended easterly to the Arkansas River was the division line of the accretions. The Chancery Court found that the said agreement had been made; and therefore entered a decree for the defendants, Baumgartner *et al.* From that decree the plaintiffs, Mr. and Mrs. Clauss bring this appeal.

I. *Proof Of The Alleged Boundary Agreement.* Except for the agreement relied on by the appellees, the appellants would prevail on the apportionment of the

---

[1] This was one of the best tried cases on accretions that we have been privileged to examine. Appellants, having the burden in the lower court and also in this Court, have presented every available source of information on the course and changes in the river; and both sides have favored us with excellent briefs.

[2] In *Knight* v. *Rogers,* 202 Ark. 590, 151 S. W. 2d 669, we had occasion to consider the accretion on the north of said Section 34.

accretions; so we come directly to the agreement. Baumgartner *et al.* contracted to purchase their lands in Section 34 in 1932; received their deed in 1934; had a survey made in October, 1935; there was then a distance of 2,535 feet from the southwest corner of Section 34 easterly to the river; and Baumgartner *et al.* used the south line of Section 34 as the boundary line. In 1940 Pierce and Munn purchased the lands in Section 3; they had Colonel Stroop make a survey of the accretion land; after the Stroop survey, Munn and Baumgartner had a conversation about the boundary line; and it was agreed that the south line of Section 34 extended easterly to the river would be the division line of the accretions, and this boundary line would extend to the southeast corner of Section 34 if the river added accretions for that distance. A fence was constructed along the south line of Section 34 to the river bank; Baumgartner *et al.* cut timber and exercised other acts of ownership of the lands north of the division line; and Pierce and Munn cut timber and exercised other acts of ownership on the lands south of the division line. Portions of the fence along the division line were washed away in subsequent overflows, but the division line was blazed, and portions of the fence were still visible at the time of the trial in the Chancery Court.

Munn and Pierce sold the lands in Section 3 to Neumier in 1943; Neumier and his tenants remained south of the south line of Section 34 extended easterly; Neumier sold to Clauss in 1948; Clauss never made any overt claim to any of the lands north of the south line of Section 34 extended easterly to the river until a short time before the filing of this suit. Baumgartner *et al.* exercised all the possession that was exercised by anyone on the lands north of the south line of Section 34 extended easterly to the river; and neither Clauss nor anyone else ever attempted to exercise any possession of any kind north of the said line.

In view of the foregoing evidence, and others in the record, it is clear: (a) that up until 1940 there had been uncertainty as to the dividing line of the accretions; (b) that after separate surveys the then owners agreed

on the division line as being the south line of Section 34 extended easterly to the river; (c) that both parties making the agreement claimed up to the said dividing line and never claimed beyond it; and (d) that the successors in title to Munn and Pierce (Neumier and Clauss never openly claimed beyond the agreed boundary line until a short time before the filing of this suit.

It is true that the evidence is in sharp dispute on many of the matters we have detailed; and it is also true that Baumgartner's testimony as to the boundary line agreement was attacked as contradictory to that contained in his previous deposition. Nevertheless, the Chancery Court found that there had been an agreement as to the boundary line and that such agreement had been observed by the owners of Section 3 until shortly before the filing of this suit. From a careful study of the record, we cannot say that the finding of the Chancery Court is against the preponderance of the evidence on this factual question.

I. *The Validity And Efficacy Of The Boundary Line Agreement.* We have many cases on agreed boundary. Some of them are: *Sherman* v. *King,* 71 Ark. 248, 72 S. W. 571; *Cox* v. *Daugherty,* 75 Ark. 395, 36 S. W. 184, 112 Am. St. Rep. 75; *Payne* v. *McBride,* 96 Ark. 168, 131 S. W. 463, Ann. Cas. 1912B 661; *Malone* v. *Mobbs,* 102 Ark. 542, 145 S. W. 193, 146 S. W. 143, Ann. Cas. 1914A 479; *Robinson* v. *Gaylord,* 182 Ark. 849, 33 S. W. 2d 710; *Peebles* v. *McDonald,* 208 Ark. 834, 188 S. W. 2d 289; and *Jewel* v. *Shiloh Cemetery Assn.;* 224 Ark. 324, 273 S. W. 2d 19. We have many times quoted and applied the rule as clearly stated by Chief Justice HART in *Robinson* v. *Gaylord, supra*:

". . . where there is a doubt or uncertainty, or a dispute has arisen, as to the true location of a boundary line, the owners of the adjoining lands may, by parol agreement, fix a line that will be binding upon them, although their possession under such agreement may not continue for the full statutory period."

In the case of *Malone* v. *Mobbs, supra,* there was involved the application of the agreed boundary line rule

to accretions. In that case — just as here — adjacent land owners agreed that the extension of the section line would be the boundary line of the accretions. This Court upheld the agreement, saying:

"In the case of *Payne* v. *McBride,* 96 Ark. 168, we held: 'Where there is doubt, dispute or uncertainty as to the true location of the boundary line the parties may by parol fix a line which will, at least when followed by possession with reference to the boundary so fixed, be conclusive upon them although the possession is not for the full statutory period." To the same effect is *O'Neal* v. *Ross,* 100 Ark. 555; *Butler* v. *Hines,* 101 Ark. 409. It follows that the line agreed upon by Burrows and Hill is the true line between the parties as to the accretions."

Appellants recognize the force of the rule just stated and its application to accretions; but offer two arguments in an endeavor to show that the rule should not be applied in the case at bar. In the first place, the appellants say that the 1940 agreement was nullified because the lands washed away after 1940 and were reformed. The Chancery Court found otherwise, and such finding is not contrary to the preponderance of the evidence, especially in view of one salient fact, which is: that portions of the wire fence, erected in 1935 on the accretions, are still visible. Certainly, the presence of this fence shows that the lands were never washed away and restored.

Secondly, the appellants contend that any such agreement about the division line being the south boundary line of Section 34 extended easterly to the river, even if made as detailed in Topic I, could only relate to the lands *then in existence* and not to lands subsequently formed by accretions. But we hold such contention to be without merit in this case. The record shows that at the time of the survey in 1935, the distance from the Southwest corner of Section 24 easterly to the river was 2,535 feet. It is not stated what the distance was when the 1940 agreement was made; but the maps in the record reflect that the west bank of the river is now some-

where in the SW¼ SE¼ of Section 34. A scaling of the map indicates that the west bank is now approximately 3,080 feet east of the southwest corner of Section 34. So a distance of approximately 545 feet has been added to the division line since the 1935 survey. Possession has been taken by Baumgartner *et al.* of the new accretions north of the division line just as rapidly as the accretions have been formed. In short, the agreement as to the boundary has been ". . . followed by possession with reference to the boundary so fixed . . ."[3] just as rapidly as the lands have formed.

In view of these facts, we think the 1940 agreement covers all the lands herein involved. The case of *Reeves* v. *Moore,* 105 Ark. 598, 151 S. W. 1025, does not hold that an agreement for such a short distance is unreasonable or void. In that case it was sought to make a boundary line agreement of 1870 apply to accretions formed as late as 1907, and to have the boundary line agreement extend for over a mile and across island lands. The factual situation here is vastly different.

Finding no error, the decree of the Chancery Court is affirmed.

GEORGE ROSE SMITH, J., dissents.

---

[3] Quotation from *Payne* v. *McBride, supra.*