Walter H. WRIGHT et ux *v.* Ralph MURR et al

5-4597                                          428 S. W. 2d 637

Opinion delivered June 3, 1968

*Jeff Duty,* for appellants.

*W. Q. Hall,* for appellees.

Lyle Brown, Justice. This is a suit brought by the appellants, Walter H. Wright and wife, to establish a boundary line on the south portion of their property, plus other incidental relief. The appellees, Ralph Murr, Jim Donnohue, and Jack E. Brannon, landowners adjoining the Wrights, filed a general denial and pleaded that the cause be dismissed for want of equity. After presentation of the appellants' case in chief, which consisted solely of Mr. Wright's testimony and ten pictures as exhibits, the chancellor sustained a demurrer to the plaintiffs' evidence.

The appellants purchased and took possession of a tract of real estate in Madison County on September 12, 1959. The deed conveyed all the land lying in the SE¼ of the NE¼, Sec. 17, Twp. 17 N., R. 26 W. In addition it stated that the land was approximately forty acres. In their complaint the appellants claim title to all lands under fence by adverse possession for more than seven years. In February 1967 Ralph Murr and some helpers moved the fence on the southern boundary. Over the protests of the appellants they ran a new fence along the south end of the land but north of the old fence line.

During the course of the trial Mr. Wright testified to the following material facts: When he bought the land in 1959 it was entirely fenced; he bought "all that was within fence"; it was fenced "hog tight"; he immediately moved on the land and took possession, claiming up to the fences; and his possession was peaceful and uninterrupted save one incident. In 1963 while cutting timber on the now disputed strip, appellee Jim Donnohue told appellant that the land was Donnohue's and to stop cutting. Appellant complied. The appellant stated on cross-examination, "I told Jim's mother that if they were their logs, I'd pay for them. If they were proven to be their logs."

Pictures were offered during the trial to establish the old fence line and to show the changes that have since occurred. The exhibits were admitted into evidence without objection.

The question here presented is whether the chancellor erred in sustaining appellees' demurrer to the evidence. The case of *Werbe* v. *Holt*, 217 Ark. 198, 229 S. W. 2d 225 (1950), states the rule as follows:

"What, then, is the effect of a demurrer to the evidence or a similar pleading in jurisdictions recognizing that practice? The question may arise either in equity cases, where the chancellor is the arbi-

ter of the facts, or in cases tried at law without a jury, where also the trial judge decides all issues of fact. By the overwhelming weight of authority it is the trial court's duty, in passing upon either a demurrer to the evidence or a motion for judgment in law cases tried without a jury, to give the evidence its strongest probative force in favor of the plaintiff and to rule against the plaintiff only if his evidence when so considered fails to make a *prima facie* case . . . The minority view, which permits the trial judge to weigh the evidence is well stated in *Porter* v. *Wilson,* 39 Okla. 500, 135 P. 732.''

In *Werbe* this court adopted the majority view.

The chancellor erred in sustaining the demurrer. The trial court took cognizance of the weakness of appellants' prima facie case. That fact should not necessarily be fatal. In *Werbe* the court states, '' . . . in many instances the plaintiff's prima facie case must necessarily be somewhat weak, for the reason that only the defendant himself may be able to supply details needed to complete the picture.'' Also, the chancellor stressed the fact that Wright stopped cutting timber when Jim Donnohue interrupted him. Wright said, ''I'll pay for them. If they were [are] proven to be their logs.'' Such a statement could just as easily be interpreted to mean that he was not conceding Donnohue's claim but merely using discretion in having the question settled peaceably and judiciously.

Finally, the chancellor noted in his remarks 'the failure of the appellants to show identity between the tract bought and the fenced land. The complaint only alleged adverse possession, so record title was not an issue. A similar fact situation occurred in *O'Neal* v. *Ross,* 100 Ark. 555, 140 S. W. 743 (1911):

''When lots 6 and 8 were purchased by the defendants, they were enclosed, and he claimed to the

1166

fence between the property he purchased and that now owned by the plaintiff. He claimed to a line visible and known, and his actual possession was coextensive with that boundary. The testimony on the part of the defendant shows that he took possession of the land under the claim and belief that it was his own, and has held it by adverse possession for the statutory period of seven years."

In that case the court found the property was held to the fence line with the intention that it was the boundary rather than the description recited in the deed.

We find the appellants' evidence did establish a prima facie case for the purpose of requiring appellees to go forward with their proof.

Reversed and remanded.